955 F.Supp. 711 (1996)
Doris WILLIAMS, Plaintiff,
v.
E.I. DU PONT DE NEMOURS & COMPANY, Benjamin Davis, and Pete Chapman, Defendants.
Civil Action No. H-94-3976.
United States District Court, S.D. Texas, Houston Division.
July 3, 1996.
*712 *713 Daryl Lane Moore, Houston, TX, for Doris Williams.
Matthew Luke Hoeg, Mayor Day Caldwell & Keeton, Houston, TX, Lizzette Marie Palmer, Houston, TX, for E.I. du Pont de Nemours & Co. Inc.
Matthew Luke Hoeg, Mayor Day Caldwell & Keeton, Houston, TX, for Benjamin Davis, Pete Chapman, Richard Taylor.

*714 MEMORANDUM AND ORDER

ATLAS, District Judge.
Plaintiff Doris Williams ("Williams" or "Plaintiff"), an African-American woman, filed this action on November 21, 1994, claiming that Defendants E.I. du Pont de Nemours & Company ("DuPont"), Pete Chapman ("Chapman"), and Benjamin Davis ("Davis") discriminated against her on the basis of her race and gender in violation of Title VII of the Civil Rights Act of 1964, as amended, and 42 U.S.C. § 1981. Plaintiff also brings a claim under Texas law for intentional infliction of emotional distress. Defendants DuPont, Chapman and Davis have filed a Motion for Summary Judgment ("Motion") [Doc. # 35] as to all claims asserted by Plaintiff. The Court has considered the Motion, all responses and replies, all other matters of record in this case, and the relevant authorities. For the reasons stated herein, Defendants' Motion for Summary Judgment [Doc. # 35] is GRANTED.

I. FACTUAL BACKGROUND

Williams was hired by DuPont as a General Helper on November 6, 1989. In March 1991, she was promoted to a Level 5 Operator in the Vinyls Division; in April 1991, she advanced to a Level 6 Operator. Defendant Benjamin Davis was Williams' immediate supervisor, and Defendant Pete Chapman was Davis' supervisor. Williams' charge of discrimination, filed with the Equal Employment Opportunity Commission ("EEOC") on January 27, 1993, states that she was discriminated against on the basis of her race and sex, and specifically that the discipline she received as a result of an acid leak in July 1991 was not imposed upon persons who are not African-American, that she was retaliated against for opposing the discipline, and that she was "subjected to irregular questioning" about becoming ill on the job.[1]
On July 27, 1991, during the production process, there was a release of acetic acid in the Vinyls Division, where Williams was a Level 6 Operator.[2] Plaintiff states that Randy Wilson and Don Sager, two white males who worked the shift before her, forgot to "danger tag" a valve that should not have been used, and cites Davis' deposition as support for her argument that Wilson and Sager had the responsibility for doing so.[3] Because of the absence of a "danger tag," Williams believed the non-operational valve was operational and put it into use, thereby causing acetic acid to be released.[4] Defendants state that Williams had not inspected the filter pot and therefore did not know that it was disassembled.[5] Defendants further state that, because of the incident, approximately 450 pounds of hot acetic acid and tar waste were released to the ground and approximately 30 pounds of hot acetic acid and tar waste were released to the atmosphere.[6]
On July 28, 1991, as part of DuPont's initial investigation into the incident, Davis called Williams into a meeting with seven white males.[7] Williams states that Davis accused her of causing the spill, even though Wilson and Sager admitted that they had failed to "danger tag" the valve and that they *715 had not told Williams not to open it.[8] Williams further states that Davis concluded that Williams was at fault, despite the fact that three individuals' actions had contributed to the spill.[9]
Several days later, Davis wrote a memorandum to Chapman in which he stated that, although Williams' file was "almost squeaky clean," he recommended that she be disciplined by a "Note to File," the second tier in DuPont's five-tier discipline system.[10] Nevertheless, on August 28, 1991, contrary to his own recommendation for a Note to File, Davis placed Williams on Special Review, the third tier in the disciplinary process.[11] Williams objected to the Special Review, stating that she felt she was being subjected to discrimination based on her race and gender.[12] In addition, Williams' union representative objected on the grounds that the Special Review was inconsistent with past plant practice.[13] Defendants claim that Williams had acknowledged that she neglected to inspect and verify the operational status of the filter pot before diversion.[14] Defendants further claim that Williams complained of harassment and discrimination on the basis of race and sex only after being notified that she was placed on Special Review.[15]
Williams alleges that from the time of the spill on July 27, 1991, until she received Special Review on August 28, 1991, she was subjected to slurs of "tar baby" and "sprint runner."[16] The Court notes that Plaintiff's summary judgment evidence does not identify the person or persons who used these slurs or the frequency of them.[17]
On September 29, 1991, Wilson and Sager, the two white men involved in the spill, received Notes to File. Williams points out that this discipline, which Davis had originally recommended for her, was imposed only after she alleged that she had received unfair treatment, and thirty days after she had been placed on Special Review.[18]
On October 18, 1991, Davis and Chapman placed Williams on probation, the final disciplinary warning before termination and the fourth of five tiers. The probation allegedly was imposed as a result of Williams' role in the spill and her excessive absenteeism, although Williams claims that her absences resulted directly from injury she suffered from the spill.[19] Williams alleges that this *716 action was improper since it occurred less than sixty days after she was placed on Special Review, and since probation usually is to be imposed only after several less severe disciplinary steps have failed.[20] Further, Plaintiff alleges that Chapman told her she would be the "most watched operator" on her shift, and that she "had better walk a tightrope."[21] When Williams responded that she "could not handle" the discrimination and harassment and reported the slurs of "tar baby" and "sprint runner," Chapman allegedly told her that he did not like dealing with people problems and asked her if this was an "Anita Hill mess."[22]
On November 1, 1991, Chapman and Davis called Williams into another meeting and issued a second probation, which Williams alleges was unnecessary and issued for no reason other than to harass her. Williams was very upset and, in order to not to work under Davis any longer, asked to "reduce out" of his area.[23] When Davis prepared a "Report on Employee" ("ROE") form for Williams signature so that she could "reduce out," Williams refused to sign it until she noted on the form that she was doing so because of discrimination and harassment.[24]
In November 1991, Williams contacted Georgia Landrum in DuPont's Human Resources Department and made a complaint about the alleged harassment and discrimination stemming from the acid release and the name-calling. Defendants state that Landrum investigated the complaint and concluded that there was no basis to support an allegation of race or sex discrimination.[25] Plaintiff, however, states that Landrum never interviewed the individuals on Williams' shift to investigate the racial slurs, and that she did not talk to Wilson and Sager to assess their roles in the spill.[26] After Williams reported the alleged harassment and discrimination to Landrum, DuPont management acknowledged that Williams' probation was inconsistent with plant practice and reduced her probation to Special Review.[27] Later in November, a position as a first line supervisor became available; while Williams was ineligible to apply because of her disciplinary status, those who had received only Notes to File were eligible.[28]
In January 1992, concerned about her mental well-being, Williams returned to Human Resources and requested help through the Employment Assistance Program ("EAP").[29] She began seeing a psychologist, Dr. Darline Stoll, for depression and anxiety resulting from her job.[30] Dr. Stoll consulted with Dr. Naquin at EAP, who confirmed that Williams' perceptions of her work situation were "accurate."[31] Dr. Stoll diagnosed *717 Williams as suffering from major depression, directly related to the stress she experienced in her work setting.[32] On Dr. Stoll's recommendation, Williams began seeing a psychiatrist, Dr. Villarubia, who provided her with medical treatment for problems stemming from her work situation.[33]
On May 13, 1992, Williams met with Defendants to address a grievance she had filed, and specifically objected to having been placed on Special Review when others involved received only Notes to File.[34] The Grievance Report, signed by Richard Taylor for DuPont, listed the allegations made by Williams, including, among other things, harassment, discrimination, unfair disciplinary action, exposure and disability, being a scapegoat, and improperly including absenteeism as part of the Special Review.[35] Taylor then denied the grievance, stating that "[i]nvestigations (both internally and by the Employee Relations group) can find no support for these allegations or inferences."[36] Nevertheless, Taylor removed the Special Review from Williams' file and replaced it with a Note to File, stating that the Special Review had served its purpose since Williams regretted the incident, and clearly understood the consequences of her actions and knew what was expected of her.[37]
During the next several weeks, in two separate incidents, Williams noticed lug nuts missing from the wheels of her car as she was leaving work. Although she reported the incidents to DuPont, she states that no investigation was conducted and that she became frightened to go to work.[38] The summary judgment evidence presented by Plaintiff does not make any allegation that Defendants were somehow responsible for these incidents, nor does Plaintiff's evidence in any way tie the incidents to discrimination on the basis of race or sex.
On May 29, 1992, Williams met with Landrum, along with Karan Guyon and Gary Theis of DuPont, and again outlined her complaints of discrimination and harassment.[39] On July 9, 1992, she met with Landrum and Guyon again to discuss her grievance.[40] At this meeting, Guyon and Landrum told Williams that her complaints of harassment and discrimination would not be handled through the union grievance procedure; nevertheless, the meeting proceeded and Williams' complaints were discussed.[41]
In November 1992, Williams' father died. Upon returning from the funeral, Williams asked to reschedule a meeting with Guyon and Landrum that had been set to discuss her grievances.[42] However, Landrum called Williams and told her that she and Guyon would come to Williams' home and, although Williams protested because she was tired and upset, Landrum persisted until Williams gave in.[43] When Landrum and Guyon arrived, they made a settlement offer to Williams and began joking about it, allegedly asking Williams if she was dating her attorney and telling her that she would have a good Christmas.[44] Williams states that, although she told Guyon and Landrum that they were "out of line" and refused to sign the settlement agreement that day, they *718 called her several times at home over the next few days, pressuring her to settle.[45]
Upon returning to work, Williams went to personnel to review her file and discovered that Davis had altered the ROE which reported her "reducing out," after signing it and giving her a copy, by crossing out Williams' note stating that she felt she had been subject to discrimination and harassment.[46] It is unclear from the record when the ROE was altered.[47] Williams was very upset by the alteration and returned to her doctor.[48]
Williams filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on January 27, 1993, based on the July 1991 incident as well as "irregular questioning" about an illness in September 1992, and discrimination and retaliation because of her race and sex.
Williams was promoted to a Level 6 operator, the same position she had held at the time of the accident, effective January 1, 1995.[49] In September, 1995, Williams was found eligible for Total and Permanent Disability from DuPont, and her employment with DuPont ended.[50]
This suit was filed on November 21, 1994.

II. SUMMARY JUDGMENT STANDARD

In deciding a motion for summary judgment, the Court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986); Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir.1994) (en banc); Bozé v. Branstetter, 912 F.2d 801, 804 (5th Cir.1990). The facts are to be reviewed with all inferences drawn in favor of the party opposing the motion. Bozé, 912 F.2d at 804 (citing Reid v. State Farm Mut. Auto Ins. Co., 784 F.2d 577, 578 (5th Cir.1986)). However, factual controversies are resolved in favor of the nonmovant "only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." McCallum Highlands, Ltd. v. Washington Capital Dus, Inc., 66 F.3d 89, 92 (5th Cir.), revised on other grounds upon denial of reh'g, 70 F.3d 26 (5th Cir.1995).
The party moving for summary judgment has the initial burden of demonstrating the absence of a material fact issue with respect to those issues on which the movant bears the burden of proof at trial. For any matter on which the nonmovant carries the burden of proof at trial, however, the movant may, by merely pointing to the absence of evidence supporting the essential elements of the nonmovant's case, shift to the nonmovant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact so as to warrant a trial. Transamerica Ins. Co. v. Avenell, 66 F.3d 715, 718-19 (5th Cir.1995); Douglass v. United Servs. Auto. Ass'n, 65 F.3d 452, 459 (5th Cir.1995), revised on other grounds, 79 F.3d 1415 (5th Cir.1996) (en banc); Forsyth v. Barr, 19 F.3d 1527, 1533 (5th Cir.), cert. denied, 513 U.S. 871, 115 S.Ct. 195, 130 L.Ed.2d 127 (1994).
The nonmovant's burden may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence. Douglass, 65 F.3d at 459; Little, 37 F.3d at 1075. In the *719 absence of any proof, the court will not assume that the nonmovant could or would prove the necessary facts. McCallum Highlands, 66 F.3d at 92; Little, 37 F.3d at 1075 (citing Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888, 110 S.Ct. 3177, 3188, 111 L.Ed.2d 695 (1990)). Rule 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial. Little, 37 F.3d at 1075 (citing Celotex, 477 U.S. at 322, 106 S.Ct. at 2552).

III. DISCUSSION

On Defendants' motion for summary judgment, this Court must view all facts in the light most favorable to Plaintiff and decide whether Defendants have established that there is no genuine issue of material fact so as to require a trial.

A. TITLE VII

1. Personal Liability of Individual Defendants

Defendants argue that the individual Defendants, Chapman and Davis, are not personally liable to Plaintiff because neither of them qualifies as an "employer" under the Title VII definition. Title VII defines "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person." 42 U.S.C. § 2000e(b). Plaintiff argues that under Garcia v. Elf Atochem North America, 28 F.3d 446, 450-51 (5th Cir.1994), Davis and Chapman each may be held liable for discriminatory acts as an agent because each was a supervisor with the power to hire, fire, and reprimand Williams.
Title VII does not impose individual liability upon supervisory employees unless they meet the statutory definition of "employer." Stults v. Conoco, Inc., 76 F.3d 651, 655 (5th Cir.1996) (ADEA claim); Grant v. Lone Star Co., 21 F.3d 649, 652-53 (5th Cir.1994) ("[T]itle VII does not permit the imposition of liability upon individuals unless they meet title VII's definition of `employer'"), cert. denied, 513 U.S. 1015, 115 S.Ct. 574, 130 L.Ed.2d 491 (1995). While under certain circumstances an individual supervisor may be liable in his or her official capacity, "Title VII liability does not attach to individuals acting in their individual capacity." Garcia, 28 F.3d at 451 & n. 2. All of Defendants' conduct about which Plaintiff complains was performed in the course of these Defendants' official duties, not while they were acting as individuals. Plaintiff's complaint is fundamentally against DuPont, acting through its agents. Title VII is not intended to burden small entities such as individual employees with civil liability and costs associated with litigating discrimination claims. See Grant, 21 F.3d at 652-53. Therefore, summary judgment is granted and Plaintiff's Title VII claims against Chapman and Davis are dismissed.[51]

2. Limitations Period

A plaintiff must file a charge of discrimination within 300 days after the allegedly discriminatory incident in order to recover damages flowing from that incident. See 42 U.S.C. § 2000e-5(e)(1); Griffin v. City of Dallas, 26 F.3d 610, 612-13 (5th Cir.1994). Incidents that occurred outside of the limitations period may be properly considered as evidence relevant to the incident within the limitations period, even though they are not a basis for recovery. For example, alleged demotions or transfers that occurred outside of the 300 days could be considered as evidentiary support for a discharge that occurred within the 300 days, even though only the discharge is a basis for recovery. See Ray v. Tandem Computers, Inc., 63 F.3d 429, 434 n. 12 (5th Cir.1995); Cortes v. Maxus Exploration Co., 977 F.2d 195, 199-200 (5th Cir.1992); Humphreys v. *720 Medical Towers, Ltd., 893 F.Supp. 672, 683 (S.D.Tex.1995).
The parties agree that, since Williams filed her EEOC charge on January 27, 1993, she may recover for any violations on or after April 2, 1992. Motion, at 8; Response, at 10. However, DuPont argues that all claims based upon any action or conduct allegedly occurring before April 2, 1992 are time-barred. Plaintiff responds that she may recover for actions before April 2, 1992 on two grounds: first, because DuPont's discrimination was a "continuing violation," and second, because the doctrine of equitable estoppel prevents DuPont from asserting the limitations defense.
For the reasons stated herein, the Court concludes that neither exception asserted by Plaintiff applies, and therefore that Plaintiff may not recover under Title VII for any action or conduct occurring before April 2, 1992.[52]
Continuing Violation.  The Fifth Circuit has recognized a "continuing violation" as an equitable exception to the Title VII limitations period. The exception arises "`[w]here the unlawful employment practice manifests itself over time, rather than as a series of discrete acts.'" Waltman v. International Paper Co., 875 F.2d 468, 474 (5th Cir.1989) (quoting Abrams v. Baylor College of Medicine, 805 F.2d 528, 532 (5th Cir. 1986)). The subject matter, frequency, and permanence of the alleged discrimination are all factors to be considered when determining whether a plaintiff can support a claim for a continuing violation, although these factors are not exhaustive. Id. at 475 (citing Berry v. Board of Supervisors of Louisiana State University, 715 F.2d 971, 981 (5th Cir. 1983), cert. denied, 479 U.S. 868, 107 S.Ct. 232, 93 L.Ed.2d 158 (1986)). In order to sustain a claim under this exception, the plaintiff must show that at least one incident of harassment occurred within the limitations period. Id. at 475.
Williams argues that the incidents in this case satisfy the requirements of subject matter, frequency, and permanence. She states that DuPont's acts "involve the same type of discrimination," since DuPont first improperly blamed her for the incident, then punished her more harshly than her white male counterparts. Second, Plaintiff argues that the harassment and discriminatory acts were not an isolated event, and that, until December 1994 when Williams regained her Level 6 status, "the discrimination recurred each time [Plaintiff] was paid less than her white-male counterparts." Response, at 11. Third, Plaintiff argues that DuPont's actions did not have the appearance of permanence, because DuPont "pretended" to address her complaints and "appeared to be respond [sic] to her complaints in a manner that suggested the discrimination would not be permanent." Id. at 12. She states that, when she became aware in November 1992 that DuPont had altered her personnel records, "she realized that the discrimination would be permanent and filed her charge of discrimination just 60 days after discovering the altered document." Id.
The Court finds that the continuing violation exception does not apply because all of the allegedly discriminatory action about which Williams complains occurred during the time-barred period. Waltman, 875 F.2d at 475 (some of the allegedly connected and actionable conduct must have taken place within the limitations period). See also Doe v. R.R. Donnelley & Sons Co., 42 F.3d 439 (7th Cir.1994) (in order to establish a continuing violation, there must be a discriminatory event occurring within the limitations period which can serve as an "anchor" for the earlier conduct); Purrington v. University of Utah, 996 F.2d 1025, 1028 (10th Cir.1993) (for continuing violation, one of the acts must fall within the limitations period).
Although Plaintiff remained on Special Review into the 300 day period that preceded the filing of her EEOC charge, this disciplinary status merely carried out a prior, allegedly discriminatory action which is outside the limitations period  namely, the imposition of Special Review status in August, *721 1991.[53] All of the discipline imposed by DuPont, including the Special Review, the probation, and the second probation, was imposed more than 300 days before Plaintiff filed her EEOC charge. The only allegations within the 300 days prior to Plaintiff's EEOC charge period are the following:
 On May 13, 1992, Williams met with Defendants to address her grievance; her grievance was denied, but the Special Review was replaced with a Note to File.
 On two separate occasions, Williams noticed lug nuts missing from her car wheels as she was leaving work, and reported this to DuPont; DuPont did not undertake an investigation and Williams became frightened to go to work.
 On May 29, 1992, and July 9, 1992, Williams met with Landrum and other DuPont officials to discuss her complaints of discrimination and harassment. At the July meeting, she was informed that her complaints were outside the union grievance procedure.
 In November 1992, soon after the death of Williams' father, Landrum and Guyon came to Williams' home and called her several times, in an attempt to pressure her to accept a settlement offer.
 In November 1992, Williams discovered that her ROE form dated November 1, 1991 had been altered, so as to conceal Williams' statement that she had been subject to discrimination and harassment.
See generally Response, at 6-7.[54] Plaintiff therefore alleges merely a denial of her grievance (filed in challenge of the discipline originally imposed), a reduction in a punishment which Williams claims was motivated by discrimination, a notification by DuPont officials that her complaints were outside the union grievance procedure, a failure by DuPont to investigate lug nuts missing from Williams' car, settlement efforts, and Williams' discovery that her employee records had been altered at some unknown time.[55] None of these actions within the 300 day period prior to the EEOC charge amounts to an incident of racial or sexual discrimination or harassment which suffices as an "anchor" for earlier discriminatory conduct, as is required for a continuing violation.[56]
*722 Moreover, Plaintiff had already concluded, well within 300 days of the spill and the initial imposition of discipline, that she had been subject to discrimination and harassment. Indeed, in her meeting with Davis and Chapman on November 1, 1991, when she asked to "reduce out" of Davis' area, she refused to sign the ROE without noting that she was doing so "because of the discrimination and harassment."[57] She therefore clearly had sufficient information to file a timely Charge of Discrimination with the EEOC. See Alldread v. City of Grenada, 988 F.2d 1425, 1432 (5th Cir.1993). Viewing all of the evidence in the light most favorable to Williams, the Court concludes that she is not entitled to invoke the equitable continuing violation exception.
Equitable Estoppel.  In addition, the Court finds that DuPont is not equitably estopped from asserting a limitations defense.[58]
Filing of a timely charge with the EEOC is not a jurisdictional prerequisite to suit, and therefore waiver, estoppel and equitable tolling are applicable. See Nowlin v. Resolution Trust Corp., 33 F.3d 498, 503 (5th Cir.1994) (citing Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393, 102 S.Ct. 1127, 1132, 71 L.Ed.2d 234 (1982)). Under the doctrine of equitable estoppel, a defendant is estopped from asserting the EEOC filing time as a defense if it concealed facts or misled the plaintiff, and thereby caused her not to assert her rights within the limitations period. See Christopher v. Mobil Oil Corp., 950 F.2d 1209, 1215 (5th Cir.) (equitable tolling and equitable estoppel provide for tolling of the limitations period "when a plaintiff's unawareness of his ability to bring a claim  either unawareness of the facts necessary to support a discrimination charge or unawareness of his legal rights  is due to defendant's misconduct"), cert. denied, 506 U.S. 820, 113 S.Ct. 68, 121 L.Ed.2d 35 (1992); Rhodes v. Guiberson Oil Tools Div., 927 F.2d 876, 879 (5th Cir.) (because of company's statements, plaintiff was without sufficient facts to be aware of possible age discrimination claim and therefore equitable estoppel applied), cert. denied, 502 U.S. 868, 112 S.Ct. 198, 116 L.Ed.2d 158 (1991).
Plaintiff argues that equitable estoppel should be applied in this case because DuPont and Landrum misled her, and actively concealed information from her, to prevent her from filing a claim. She states that, although she "considered" filing her EEOC charge before January 1993, "she waited because Ms. Landrum requested a chance to investigate her claims of harassment." Response, at 13; see also Williams Affidavit, ¶ 15, at 3 ("I discussed filing a charge of discrimination but Ms. Landrum told me to wait until she could investigate and try to resolve the problems"). She notes that DuPont appeared to be addressing the issue and reduced her discipline from a Special Review to a Note to File. She further claims that Landrum initially told her that her complaints could be resolved in the union grievance procedure but that, once the 300 days had expired from the date of the actionable discrimination and harassment, told her that her complaints were outside this procedure.[59] Williams also alleges that Landrum presented herself to Williams as a friend but concealed *723 DuPont's falsification of Williams' records in order to persuade her to settle her claims. Plaintiff's Surreply, at 3; Deposition of Darline Hunter Stoll, Ed.D. (Exhibit A to Surreply), at 44-46. Plaintiff again points out that, after learning in November 1992 that DuPont allegedly had altered her records at some unknown time, she promptly filed a charge with the EEOC. Plaintiff's Surreply, at 3.
Equitable tolling doctrines are to be invoked by those who were not aware of their legal rights or their ability to bring a claim, either because an employer concealed facts that could have led the employee to suspect discrimination, or because the employer misled the employee about the nature of her legal rights. See Christopher, 950 F.2d at 1215; Rhodes, 927 F.2d at 879. Unfortunately for Plaintiff, she had, by her own account, concluded that she had been subjected to discrimination, and had even "considered" filing an EEOC charge based on this alleged discrimination, as early as November 1, 1991.[60] She therefore is not entitled to invoke equitable doctrines merely because she later became aware of additional facts that could lend support to her claim of discrimination. Williams' belated awareness of the alteration of her personnel records in no way prevented her from filing an EEOC charge within 300 days of the discriminatory events, and none of the other alleged actions which occurred within the 300 day limitations period preceding the filing of Plaintiff's EEOC charge were necessary components of Williams' claim of discrimination. Cf. Christopher, 950 F.2d at 1216 (equitable estoppel not warranted where employee is aware of all facts supporting discrimination claim but lacks direct knowledge of employer's subjective discriminatory intent). Since Williams has not alleged that she was unaware of sufficient facts to support a discrimination claim, nor argued that Defendants misled her about the nature of her legal rights, her equitable estoppel argument must fail as a matter of law.

3. Disparate Treatment

Given the conclusion above that no exceptions to the 300 day limitations period apply, Title VII permits only conduct or action occurring on or after April 2, 1992 to be considered as a basis for recovery by Plaintiff. Nevertheless, the time-barred conduct will be considered as evidence relevant to the intent motivating the conduct within the limitations period. See Ray, 63 F.3d at 434 n. 12; Cortes, 977 F.2d at 199-200.
Title VII makes it unlawful for an employer to discharge or otherwise discriminate against an individual with respect to that person's compensation, terms, conditions, or privileges of employment, or to otherwise adversely affect the person's status as an employee, because of that person's sex or race. 42 U.S.C. § 2000e-2(a). Plaintiff bears the initial burden of establishing a prima facie case of intentional discrimination, for which the requirements are (1) that she is a member of a protected class, (2) that she was qualified for the position she held, (3) that she was discharged or subject to adverse employment action, and (4) that those outside the protected class were placed in her position following the discharge or otherwise received more favorable treatment. St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506-07, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407 (1993); Meinecke v. H & R Block of Houston, 66 F.3d 77, 83 (5th Cir.1995). If Plaintiff establishes this prima facie case, a presumption of discrimination is created, and the burden of production shifts to Defendant to articulate a legitimate, non-discriminatory reason for its actions. St. Mary's, 509 U.S. at 506-07, 113 S.Ct. at 2747; Meinecke, 66 F.3d at 83. If Defendant satisfies this burden, the presumption disappears and Plaintiff must prove that the proffered reasons are a pretext for discrimination. Meinecke, 66 F.3d at 83. Throughout the case, the Plaintiff retains the ultimate burden of persuading the finder of fact that Defendant intentionally discriminated against the Plaintiff. St. Mary's, 509 U.S. at 506-07, 113 S.Ct. at 2747.
*724 Plaintiff's disparate treatment claim fails because she has not alleged sufficient facts to establish a prima facie case of discrimination on the basis of race or sex. Specifically, she has not alleged that she was subject to an adverse employment action within the relevant time period.[61] Rather, her allegations are only that DuPont failed to investigate incidents in which lug nuts were removed from her wheels, that DuPont officials pressured her to accept a settlement offer, that her personnel records were altered, and that she had meetings with Defendants at which her grievance was denied, her discipline was reduced and she was told later that her complaints fell outside the union grievance procedure. Even when all of the conduct alleged by Plaintiff is considered as evidentiary support for this conduct within the limitations period, the conduct simply does amount to an "adverse employment action." Therefore, viewing all evidence in the light most favorable to Williams, her allegations do not suffice to establish a prima facie case of disparate treatment. Summary judgment on this claim is therefore granted.

4. Harassment and Hostile Environment

As with Plaintiff's disparate treatment claim, only those actions or conduct occurring on or after April 2, 1992 may serve as a basis for recovery for Williams' claims of harassment and hostile environment; however, time-barred conduct may provide evidence of intent motivating the conduct within the limitations period.[62]See Ray, 63 F.3d at 434 n. 12; Cortes, 977 F.2d at 199-200.
To establish an actionable claim of sexual or racial harassment, Plaintiff must demonstrate the following: (1) that she belongs to a protected class, (2) that she was subject to unwelcome sexual or racial harassment, (3) that the harassment was based on race or sex, (4) that the harassment affected a "term, condition or privilege of employment", and (5) that the employer either knew or should have known of the harassment and failed to take prompt remedial action. Wallace v. Texas Tech Univ., 80 F.3d 1042 (5th Cir. 1996) (racially hostile environment); DeAngelis v. El Paso Municipal Police Officers Ass'n, 51 F.3d 591, 593 (5th Cir.), cert. denied, ___ U.S. ___, 116 S.Ct. 473, 133 L.Ed.2d 403 (1995) (sexually hostile environment); Nash v. Electrospace System, Inc., 9 F.3d 401, 403 (5th Cir.1993) (sexually hostile environment). Under the separate criteria for a hostile environment claim, Plaintiff must show (1) sexually or racially discriminatory intimidation, ridicule, and insults, which are (2) sufficiently severe or pervasive that they (3) alter the conditions of employment, and (4) create an abusive working environment. DeAngelis, 51 F.3d at 594 (citing Harris v. Forklift Systems, 510 U.S. 17, 20-22, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993)).
Plaintiff's claims of harassment and hostile environment on the basis of her race and sex fail because, as discussed in the context of Williams' disparate treatment claim, there is no allegation that any of the allegedly harassing actions taken within the limitations period affected a term, condition, or privilege of her employment. See supra at 724. The only arguably harassing events that occurred within the actionable period were the removal of lug nuts from Williams car and DuPont's failure to investigate, and the pressure by DuPont officials for Williams to settle her complaints of discrimination against them. Moreover, while the conduct at issue may exhibit poor judgment by DuPont officials, none of the evidence supports a finding that Williams was subject to any harassment within the relevant period that was "based upon" her race or sex, or that she was subjected to sexually or racially discriminatory intimidation, ridicule, or insults.[63] *725 Therefore, viewing all of the evidence in the light most favorable to Williams, the Court finds that summary judgment in favor of Defendant is appropriate.

B. SECTION 1981

1. Limitations Period

The parties are in agreement that the applicable Texas statute of limitations for Williams' claim under 42 U.S.C. § 1981 ("Section 1981") is two years. See National Ass'n of Gov't Employees v. City Public Serv. Bd. of San Antonio, Tex., 40 F.3d 698, 713 n. 22 (5th Cir.1994); Price v. Digital Equipment Corp., 846 F.2d 1026, 1028 (5th Cir.1988). Plaintiff asserts without citation that "[b]ecause the claims are evaluated under Texas law, the same equitable tolling exceptions to extend the statute of limitations apply." Response, at 21. Plaintiff further states that her "claims for emotional distress should be considered one continuing act for purposes of the two-year statute of limitations" and that Defendants' conduct was a "continuing tort," and therefore that her claims under Section 1981 is not time-barred. Response, at 21.
For the reasons given above in the discussion of Plaintiff's Title VII claim, see supra at 719-23, any equitable exceptions which might be available to toll the limitations period as to Plaintiff's Section 1981 claim are not applicable in this case. Plaintiff's arguments for a continuing violation and equitable estoppel fail as a matter of law. Therefore, all of Plaintiff's allegations which pertain to actions or events prior to November 21, 1992 are not actionable under Section 1981.[64]

2. Merits

The standards for a claim of intentional discrimination under Title VII and Section 1981 are essentially the same. Wallace, 80 F.3d at 1047. Given the Court's conclusion that Williams' allegations are insufficient to defeat summary judgment on her Title VII claims, and given that all actions before November 21, 1992 may not be considered as a basis for recovery under Section 1981, summary judgment on Williams' Section 1981 claim must also be granted.

C. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

In order to recover damages for intentional infliction of emotional distress, Plaintiff must prove the following:

*726 (1) Defendants acted intentionally or recklessly;
(2) Defendants' conduct was extreme and outrageous;
(3) Defendants' actions caused Plaintiff emotional distress; and,
(4) the resulting emotional distress was severe.
MacArthur v. University of Texas Health Center, 45 F.3d 890, 898 (5th Cir.1995); Danawala v. Houston Lighting & Power Co., 14 F.3d 251, 256 (5th Cir.1993); Twyman v. Twyman, 855 S.W.2d 619, 621-22 (Tex.1993). Liability for outrageous conduct "should be found `only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" Twyman, 855 S.W.2d at 621 (quoting Restatement (Second) of Torts § 46 (1965)); accord, MacArthur, 45 F.3d at 898.
According to Plaintiff, the following allegations make up her claim of intentional infliction of emotional distress:
 Landrum and Guyon acted "outrageously" by forcing Williams to meet to discuss her charges of discrimination and harassment as soon as she returned home from her father's funeral, and Landrum agreed that this behavior was "inconsiderate" given that the death of one's father is a traumatic, emotional event.
 During the meeting at Williams' home to discuss a possible settlement, Landrum attempted to joke with Williams about what she might do with the settlement money, and asked her whether she was dating her lawyer.
 When Williams told Landrum and Guyon they were "out of line," they left; however, they called again later to pressure Williams to settle.
 DuPont management altered Williams' personnel records.
Response, at 22-23 (citing Deposition of Georgia Ann Landrum (Exhibit Q to Response), at 69-70; Williams Affidavit, ¶¶ 21, 23, at 4). Plaintiff argues that these acts, taken together, were "extreme and outrageous under the circumstances," exceeded all bounds usually tolerated by a decent society, and caused Williams' severe emotional distress, for which she required treatment. Response, at 23.
The Court is not persuaded and finds that, taking all of Plaintiff's allegations as true, Defendants' conduct  while inconsiderate at best  was not extreme and outrageous as a matter of law.[65] Moreover, many of the incidents on which Plaintiff's earlier complaints are based fall "within the realm of an ordinary employment dispute," for which the claim of intentional infliction of emotional distress does not lie. See Johnson v. Merrell Dow Pharmaceuticals, Inc., 965 F.2d 31, 33-34 (5th Cir.1992).
Therefore, Defendants' motion for summary judgment on Plaintiff's claim of intentional infliction of emotional distress is granted.[66]

CONCLUSION
For the foregoing reasons, it is now
*727 ORDERED that Defendants' Motion for Summary Judgment [Doc. # 35] is GRANTED. In particular,
 Summary Judgment as to Plaintiff's Title VII claim against Defendants Chapman and Davis is GRANTED.
 The statute of limitations bars Plaintiff from recovering for Title VII violations before April 2, 1992, and for Section 1981 violations before November 21, 1992.
 Summary judgment as to Plaintiff's Title VII claims for disparate treatment, and for harassment and hostile environment, is GRANTED.
 Summary judgment as to Plaintiff's Section 1981 claim is GRANTED.
 Summary judgment as to Plaintiff's claim for intentional infliction of emotional distress is GRANTED.
NOTES
[1] Charge of Discrimination (Exhibit CC to Response) ("EEOC Charge").
[2] In July 1991, as a Level 6 operator, Williams was qualified to work overtime; however, she alleges that her supervisor, Mr. Davis, told her that she could not work overtime because of her "inexperience." Plaintiff's Response to Defendants' Motion for Summary Judgment [Doc. #45] ("Response"), at 1; Deposition of Doris Williams (Exhibit A to Response) ("Williams Deposition"), at 88. Plaintiff further alleges that all of the other operators in the area, ten white males and one black male, were not prevented from working overtime. Response, at 1-2; Affidavit of Doris Williams (Exhibit C to Response) ("Williams Affidavit"), ¶ 2, at 1.
[3] Response, at 2; Deposition of Benjamin Bedford Davis (Exhibit D to Response) ("Davis Deposition"), at 39 (those on previous shift were responsible for identifying the valve as not being ready to be "valved in").
[4] Response, at 2; Williams Deposition (Exhibit A to Response), at 31-32.
[5] Motion, at 2.
[6] Id. at 3.
[7] Response, at 2; Williams Affidavit, ¶ 4, at 1.
[8] Response, at 2; Williams Deposition (Exhibit A to Response), at 39; Williams Affidavit, ¶ 4, at 1; Deposition of Benjamin Bedford Davis (Exhibit D to Response) ("Davis Deposition"), at 56.
[9] Response, at 2; Williams Affidavit, ¶ 4, at 1; Davis Deposition, at 60.
[10] Response, at 2; Interoffice Memorandum from Benjamin B. Davis to Peter L. Chapman, dated August 1, 1991, and attached Note to File of Doris Williams (Exhibit E to Response).
[11] Response, at 2; Davis Deposition, at 63; Employee Special Review for Doris Williams, dated August 28, 1991 (Exhibit F to Response).
[12] Response, at 2-3; Williams Affidavit, ¶ 6, at 2.
[13] Response, at 3; Interoffice Memorandum from Benjamin B. Davis to Peter L. Chapman et al., dated August 30, 1991.
[14] Motion, at 3; Williams Deposition (Exhibit A to Motion), at 45-46.
[15] Motion, at 3.
[16] Response, at 3; Williams Deposition (Exhibit A to Response), at 84; Williams Affidavit, ¶¶ 9, 14, at 2-3.
[17] Plaintiff's Original Complaint states that Danny Cantu, a DuPont operator, called Williams "tar baby." Plaintiff's Original Complaint [Doc. # 1], ¶ 13, at 3. However, Plaintiff has not directed the Court to any sworn summary judgment evidence identifying the person or persons who were responsible for the alleged slurs.
[18] Response, at 3; Notes to File for Randy Wilson and Don Sager, dated September 29, 1991 (Exhibit J to Response).
[19] Williams Affidavit, ¶ 6, at 2. Following the accident, Williams was under a doctor's care and was unable to work; she returned to work, with restrictions, in early October. Response, at 3; Williams Affidavit, ¶ 7, at 2; Medical Records from James H. Young, Jr., M.D., P.A. (Exhibit H to Response) (Williams was totally incapacitated from September 3, 1991 to October 6, 1991, and was able to return to work with restrictions on October 7, 1991). Williams states, however, that Davis instructed her to perform duties that would aggravate her condition, contrary to her doctor's orders. Response, at 3; Williams Affidavit, ¶ 7, at 2.
[20] Response, at 3; Supervisory Guide for DuPont, LaPorte Plant (Exhibit L to Response), at 5-6.
[21] Response, at 4; Williams Affidavit, ¶ 8, at 2; Williams Deposition (Exhibit A to Response), at 72.
[22] Response, at 4; Williams Affidavit, ¶ 9, at 2.
[23] Response, at 4; Williams Affidavit, ¶ 12, at 3; Williams Deposition (Exhibit A to Response), at 84.
[24] Response, at 4; Williams Affidavit, ¶ 12, at 3; Davis Deposition, at 101 (when Williams reduced out she requested that Davis note that she was doing so because of discrimination and harassment).
[25] Motion, at 4; Affidavit of Georgia Landrum [Doc. # 39], at ¶¶ 4-5.
[26] Response, at 5; Williams Affidavit, ¶ 16, at 3; Deposition of Georgia Ann Landrum (Exhibit Q to Response), at 37, 48, 53-54.
[27] Response, at 5; Chronology prepared by DuPont (Exhibit R to Response), at 2 (entry of November 19, 1991); Pathforward Decision Out of Meeting (Exhibit S to Response) (reporting that "Williams' probation was rescinded (or reduced back to Special Review) for inconsistency with plant practice").
[28] Response, at 4; Employee Probation for Doris Williams, dated November 1, 1991 (Exhibit N to Response), at 2.
[29] Response, at 5; Intake Information for DuPont Human Resources Employee Assistance Program (Exhibit T to Response).
[30] Response, at 5; Williams Deposition (Exhibit A to Response), at 146.
[31] Outpatient Progress Notes, attached to Written Deposition of the Custodian of Records for Darline Hunter Stoll, Ed.D./Southeast Psychiatry Association (Exhibit U to Response) (entry of February 5, 1992). Plaintiff reported to Dr. Stoll that a male coworker had told her that "they're going to use anything they can against you" and "they're going to get you." Id.
[32] Letter of Darline Hunter Stoll, Ed.D. (Exhibit V to Response).
[33] Response, at 5; Letters of Darline Hunter Stoll, Ed.D. and Carolyn Villarubia, M.D. (Exhibit V to Response).
[34] Grievance Report  Step III, dated May 13, 1992 (Exhibit W to Response).
[35] Id. at 1.
[36] Id.
[37] Id. at 2.
[38] Response, at 6; Williams Deposition (Exhibit A to Response), at 132-33; Williams Affidavit, ¶ 18, at 3.
[39] Response, at 6; Guyon Notes of May 29, 1992 Meeting (Exhibit X to Response).
[40] Response, at 6; Guyon Notes of July 9, 1992 Meeting (Exhibit Z to Response), at 1.
[41] Id.
[42] Response, at 7; Williams Affidavit, ¶ 19, at 3.
[43] Williams Affidavit, ¶ 20, at 4.
[44] Id., ¶ 21, at 4.
[45] Id., ¶¶ 21-23, at 4.
[46] Altered ROE dated November 1, 1991 (Exhibit BB to Response); compare Unaltered ROE dated November 1, 1991 (Exhibit Y to Response). Williams alleges that, as support for its position that no discrimination or harassment occurred, DuPont would later provide the EEOC with the altered ROE form from November 1, 1991. Response, at 7-8.
[47] See Response, at 6 n. 3.
[48] Response, at 7; Williams Affidavit, ¶ 24, at 4.
[49] Response, at 8; Report on Employee dated December 28, 1994 (Exhibit EE to Response). On August 19, 1992, Williams had been promoted from General Helper to Level 5 Operator. Response, at 7; Report on Employee dated September 14, 1992 (Exhibit AA to Response).
[50] Response, at 8; Interoffice Memorandum dated September 5, 1995 (Exhibit FF to Response).
[51] Given the above ruling as to the individual Defendants, the Court need not address Defendants' argument that Plaintiff did not exhaust her administrative remedies as against Defendants Davis and Chapman.
[52] Nothing herein is intended to minimize or devalue Plaintiff's suffering or to condone the apparent unfairness of DuPont's handling of Plaintiff's discipline or grievance.
[53] See Hendrix v. City of Yazoo City, Miss., 911 F.2d 1102, 1104 (5th Cir.1990) ("while a series of discrete acts only later recognizable as part of a general discriminatory pattern could properly be considered a continuing violation, challenges to facially neutral systems based solely on past events were time-barred unless brought within the statute of limitations for the original discriminatory act").
[54] As Defendants point out, Plaintiff's Original Complaint also states that Richard Taylor "harshly questioned" Williams about her grievance in May 1992, and that in September 1992 Landrum told her that DuPont questioned her medical visits and warned her to keep a low profile. See Plaintiff's Original Complaint, ¶¶ 20, 23, at 4-5. However, Plaintiff has not relied upon these incidents in her summary judgment papers and has not directed the Court to competent summary judgment evidence that would support these allegations.
[55] Williams' surreply states that it is "uncontroverted that at least one discriminatory/harassing act"  namely, the alteration of Williams' personnel records  occurred within the 300 day period, and that, "[u]nless DuPont contends that the falsification of a black female's employment records, committed in an effort to justify its favorable treatment of white males, is neither discriminatory nor harassing, it cannot dispute that at least one act of discrimination/harassment occurred within the 300-day period." Plaintiff's Reply to Defendants' Reply in Support of Their Motion for Summary Judgment [Doc. # 49] ("Plaintiff's Surreply"), at 2-3. However, even assuming arguendo that the alteration of the records would suffice as an act of discrimination or harassment actionable under Title VII, and that the date of the alteration could be established, it is insufficient to permit Williams to rely upon the continuing violation exception, because nothing prevented her from filing a charge of discrimination before discovering the alteration. See Alldread v. City of Grenada, 988 F.2d 1425, 1432 (5th Cir.1993) (premise underlying the continuing violation doctrine is the equitable notion that the statute of limitations ought not to begin to run until facts supportive of the cause of action are or should be apparent to a reasonably prudent person similarly situated); see also Doe v. R.R. Donnelley & Sons Co., 42 F.3d 439, 446 (7th Cir.1994) ("the purpose of permitting a plaintiff to maintain a cause of action on the continuing violation theory is to permit the inclusion of acts whose character as discriminatory acts was not apparent at the time they occurred").
[56] Plaintiff's argument that "the discrimination recurred each time [she] was paid less than her white-male counterparts," see Response, at 11, is also insufficient to establish a continuing violation. See Hendrix, 911 F.2d at 1105 (while a reduction in pay was a violation of the Fair Labor Standards Act, "subsequent pay packets simply gave it continuing effect in a facially neutral manner" and therefore did not constitute a continuing violation); see also Alldread, 988 F.2d at 1432.
[57] Williams Affidavit, ¶ 12, at 3; see also Response, at 4; Unaltered ROE dated November 1, 1991 (Exhibit Y to Response); Williams Deposition (Exhibit A to Response), at 83-84.
[58] Plaintiff bears the burden of demonstrating a factual basis to toll the limitations period for filing with the EEOC. Nowlin v. Resolution Trust Corp., 33 F.3d 498, 503 (5th Cir.1994); Rhodes v. Guiberson Oil Tools Div., 927 F.2d 876, 879 (5th Cir.), cert. denied, 502 U.S. 868, 112 S.Ct. 198, 116 L.Ed.2d 158 (1991).
[59] Plaintiff's Surreply, at 3; see Guyon Notes of July 9, 1992 Meeting (Exhibit Z to Response), at 1 (DuPont informed Williams at meeting that her complaints should not be handled through the union grievance procedure).
[60] Williams Affidavit, ¶ 12, 15, at 3; Unaltered ROE dated November 1, 1991 (Exhibit Y to Response).
[61] For a list of alleged conduct that is not time barred, see supra at 720-21. Plaintiff's complaints about imposition of Special Review and probation, as well as her complaints regarding denial of overtime, see supra note 2, are therefore among the time-barred conduct.
[62] For a list of alleged conduct that is not time barred, see supra at 720-21.
[63] Even if all of the evidence of harassment presented by Plaintiff were considered, see Response, at 19, rather than only conduct within the limitations period, the only evidence presented by Williams which supports a finding that Defendants' conduct was racially or sexually harassing is the use of the terms "tar baby" and "sprint runner." These comments do not have any sexual overtones known to this Court. While "tar baby" does have racial connotations, in this context it could have been in reference to the specific situation in issue, in which Williams had been blamed for a release of tar waste. As for "sprint runner," Williams stated in her deposition that the term was used to refer to her because "the spill was so wide, and they were saying, `Well, I don't know how you didn't get hurt. All the acid the way it come out, you could have been a sprint runner.'" Williams Deposition (Exhibit A to Response), at 84. Moreover, the Court finds that the alleged use of these insults does not rise above the level of stray remarks, see Ray, 63 F.3d at 434-35, and is at most a "mere utterance" of an "epithet which engenders offensive feelings in an employee" but is not sufficiently severe or pervasive to create a hostile or abusive working environment. See DeAngelis, 51 F.3d at 596. Finally, the Court notes that the fact that Williams was disciplined for the acid release incident while white males were not does not go to Williams' claim of racial or sexual harassment, but rather to a claim of disparate treatment.
[64] Given the Court's holding that the two year statute of limitations bars Plaintiff from recovering on any Section 1981 claims prior to November 21, 1992, the Court need not address Defendants' argument that, "[t]o the extent that Williams' § 1981 claims can somehow be based upon any alleged discrimination that occurred prior to November 21, 1991," the claims are governed by Patterson v. McLean Credit Union, 491 U.S. 164, 175-77, 109 S.Ct. 2363, 2372-73, 105 L.Ed.2d 132 (1989). Patterson held that Section 1981 did not extend to conduct occurring after formation of the employer-employee contract. Although Congress legislatively reversed the Patterson decision in 1991, and Section 1981 now explicitly governs the "making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship," see 42 U.S.C. § 1981(b), the Section 1981 amendments are not to be given retroactive effect, and therefore Patterson continues to govern pre-amendment claims. National Ass'n of Gov't Employees, 40 F.3d at 713 (citing Rivers v. Roadway Express, Inc., 511 U.S. 298, 114 S.Ct. 1510, 128 L.Ed.2d 274 (1994)).
[65] Compare Burden v. General Dynamics Corp., 60 F.3d 213 (5th Cir.1995) (summary judgment for employer on claim of intentional infliction of emotional distress affirmed, despite Plaintiff's allegations that, although he had an excellent job performance, he was reclassified into an isolated position in which he was given no input into critical management decisions, he suffered humiliation and problems with his health and marriage as a result of the reclassification, he was ostracized and given menial assignments, and his office and secretary were taken away); Johnson v. Merrell Dow Pharmaceuticals, Inc., 965 F.2d 31 (5th Cir.1992) (summary judgment for employer on claim of intentional infliction of emotional distress affirmed, despite allegations that Plaintiff was told that he did not "fit in" with the company, and that his supervisor was extremely hostile, constantly criticized him, threatened him with termination, reassigned his sales territory and removed a sale from his credits); see also Ugalde v. W.A. McKenzie Asphalt Co., 990 F.2d 239, 243 (5th Cir.1993) (allegation that supervisor called employee "Mexican" or "wetback" is insufficient to support claim for intentional infliction of emotional distress).
[66] Given this conclusion, the Court does not address Defendants' argument that Williams' intentional infliction claim is partially barred by the statute of limitations.