872 F.2d 393
 49 Fair Empl.Prac.Cas. 1159,
50 Empl. Prac. Dec. P 38,977
Gendra SENNELLO, Plaintiff-Appellee,
v.
RESERVE LIFE INSURANCE COMPANY, a foreign corporation doing
business in the State of Florida, Defendant-Appellant.
 No. 87-5860.
 United States Court of Appeals,
Eleventh Circuit.
 May 9, 1989.
 
 William E. Sizemore, Thompson, Sizemore & Gonzalez, Tampa, Fla., for defendant-appellant.
 Elizabeth J. DuFresne, Miami, Fla., for plaintiff-appellee.
 Appeal from the United States District Court for the Southern District of Florida.
 Before KRAVITCH and HATCHETT, Circuit Judges, and MARKEY*, Chief Circuit Judge.
 MARKEY, Chief Circuit Judge:
 
 
 1
 Appeal from a judgment of the United States District Court for the Southern District of Florida (Marcus, J.), 667 F.Supp. 1498 (S.D.Fla.1987), awarding Gendra Sennello (Sennello) $103,403.45 in back pay and ordering that Reserve Life Insurance Co. (Reserve) reinstate Sennello in a managerial position. We affirm.I. BACKGROUND
 
 
 2
 Presuming knowledge of the district court's reported opinion, we describe here only the basic procedural facts and those particularly relevant to Reserve's argument on appeal.
 
 The District Court's Decision
 
 3
 On September 3, 1987, the district court entered final judgment, ordering, inter alia, that Sennello recover from Reserve $103,403.45 of back pay (see 42 U.S.C. Sec. 2000e-5(g)) and be reinstated to a managerial position. Judge Marcus accompanied his judgment with 59 pages of findings of fact and conclusions of law.
 
 
 4
 Judge Marcus first discussed Reserve's liability under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Sec. 2000e, et seq., and then carefully calculated the relief due Sennello. Finding that Sennello had presented direct evidence of discriminatory motive, the court placed the burden on Reserve to show that Sennello would have been demoted and terminated even in the absence of discriminatory animus. 667 F.Supp. at 1509, 1510; See Hill v. Seaboard Coast Line Railroad Co., 767 F.2d 771, 775 (11th Cir.1985).
 
 
 5
 The district court also concluded "that if it were to apply the McDonnell Douglas analysis[1] to the present case, [Sennello] would also be found to have established her claim of discrimination by a preponderance of the evidence...." 667 F.Supp. at 1511 n. 1.
 
 
 6
 The primary facts found to constitute direct evidence were discussed by the district court in findings 18 and 20, 667 F.Supp. at 1502-04, and were succinctly recounted in its conclusions of law:
 
 
 7
 According to the testimony of Ms. Sennello's immediate supervisor, William Leahan, which we do credit, William Ebert, who as Florida Regional Manager held the power to hire and fire district managers such as [Sennello], made a number of highly discriminatory comments about women in management in the weeks and months preceding the demotion and subsequent firing of Ms. Sennello. We note in particular his remark, made in 1979, that "we can't have women in management because women are like Jews and Niggers; they hire like themselves, and the trouble with that is that when they leave they take them with them." The relevance of this remark to Reserve Life's employment practices is highlighted by the fact that it was made in the course of a discussion with [Sennello's] immediate superior, Mr. Leahan, about ways to increase production and manpower in each of the thirteen district offices under Leahan's supervision. Within this same context, Mr. Ebert criticized [Sennello's] performance as a district manager on the ground that she had hired too many women. Mr. Ebert's displeasure with Ms. Sennello's hiring practices was communicated to Ms. Sennello by Mr. Leahan, who told her that the Regional Managemer was unhappy with the "gender makeup" of her offices. Later that same year, in November 1979, Mr. Leahan was ordered by Mr. Ebert to fire Ms. Sennello. Meeting with Ms. Sennello pursuant to this order, Mr. Leahan urged her to resign her position immediately, explaining that her removal had been called for because of her failure to hire enough men in her offices.
 
 
 8
 Id. at 1508-09 (emphasis in original).
 
 Reserve's Arguments
 
 9
 Reserve argues that the district court: wrongly "characterized circumstantial evidence as direct evidence and thereby improperly placed the burden on Reserve Life to prove non-discrimination"; was clearly erroneous in finding that Reserve's demotion and termination of Sennello were the result of intentional gender-based discrimination; and abused its discretion in awarding and computing back pay.
 
 
 10
 Reserve also says the district court wrongly applied the McDonnell Douglas test because it "failed, under Rule 52(a) Federal Rules of Civil Procedure, to make findings of fact sufficient to allow review," supporting that argument with an assertion that the test was applied only in a footnote to the court's conclusion of law. That argument is patently disingenuous. Even a cursory reading of the district court's findings makes clear that the court fully analyzed Reserve's attempted "business justification" and found it to be wholly incredible. In short, the court established an exemplary record of findings of fact from which this court, had it been necessary, could have reviewed the district court's alternate conclusion.
 
 II. ISSUES
 
 11
 1. Whether the District Court correctly placed the burden on Reserve to prove that the same employment decision would have been reached absent discriminatory intent.
 
 
 12
 2. Whether the findings that Sennello's demotion and termination were based upon intentional gender-based discrimination are clearly erroneous.
 
 
 13
 3. Whether the District Court abused its discretion in awarding and computing the back pay due Sennello.
 
 III. OPINION
 1. Direct Evidence
 
 14
 We agree with Judge Marcus that Ebert's statements to Leahan, quoted supra, tended to prove directly that Reserve acted with discriminatory motivation in an employment decision.[2] See Miles v. M.N.C. Corp., 750 F.2d 867, 873-875 (11th Cir.1985); Bell v. Birmingham Linen Service, 715 F.2d 1552, 1557 (11th Cir.1983), cert. denied, 467 U.S. 1204, 104 S.Ct. 2385, 81 L.Ed.2d 344 (1984). With Ebert's statements in the record, along with the facts surrounding her demotion and termination, no further inference would be required to conclude that Reserve discriminated against Sennello. See Lee v. Russell County Bd. of Education, 684 F.2d 769, 774 (11th Cir.1982).
 
 
 15
 Reserve's attempt to analogize Ebert's slurs to the statements determined to be indirect evidence in Rollins v. TechSouth, Inc., 833 F.2d 1525 (11th Cir.1987) is unavailing. Unlike the situation in Rollins, Ebert's statements were clearly made in an employment context, and no plausible argument can be made here that his comparison of women in management to "Jews and Niggers" is facially neutral. Compare also, Young v. General Foods Corp., 840 F.2d 825, 829 (11th Cir.1988), cert. denied, --- U.S. ----, 109 S.Ct. 782, 102 L.Ed.2d 774 (1989). Ebert's statements are far more analogous to the statements determined to be direct evidence in Miles, 750 F.2d at 873-74, 876 and Bell, 715 F.2d at 1558 (11th Cir.1983), than they are to those in Rollins.
 
 
 16
 Reserve attacks the testimony of witnesses, impugning their credibility and taking their testimony out of context to paint some statements gender neutral. Whether evidence is direct is an inquiry independent of whether it is accepted as true, and it is too obvious for comment that otherwise discriminatory slurs might wear the mask of facial neutrality when viewed out of context.
 
 
 17
 Finally, we reject Reserve's argument, for which it cites no authority, that Sennello's demotion and termination were legally distinct personnel decisions. Like the situation in Nord v. United States Steel Corp., 758 F.2d 1462, 1468 (11th Cir.1985), Sennello's claims were intertwined, and "there was no need to consider them separately." Cf. Walters v. City of Atlanta, 803 F.2d 1135, 1143-44 (11th Cir.1986) (evidence supporting first discriminatory act supported discriminatory nature of subsequent acts).
 
 
 18
 2. Findings of Discriminatory Demotion and Termination
 
 
 19
 Reserve acknowledged in its brief, as it must, that to reverse Judge Marcus' findings of discrimination it must show those findings to have been clearly erroneous, so that we are "left with the definite and firm conviction that a mistake has been made." Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985) (quoting United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 541, 92 L.Ed. 746 (1948)). Careful review of Reserve's arguments and the entire record inspires in us no such conviction.
 
 
 20
 In its effort to overturn the findings of discrimination, Reserve repeats its attempt to discredit Leahan but falls woefully short of establishing internal inconsistency in Leahan's testimony. Reserve also fatally ignores finding 20, in which the court found that Leahan's testimony was "corroborated in substantial measure by the testimony of other witnesses and by much of the documentary evidence." 667 F.Supp. at 1503.
 
 3. Back Pay
 
 21
 42 U.S.C. Sec. 2000e-5(g) grants federal courts broad discretion to remedy discrimination by fashioning "the most complete relief possible." Albemarle Paper Co. v. Moody, 422 U.S. 405, 421, 95 S.Ct. 2362, 2373, 45 L.Ed.2d 280 (1975) (footnote omitted); see Darnell v. City of Jasper, Ala., 730 F.2d 653, 655 (11th Cir.1984). Under the policy of Title VII, "back pay should be denied only for reasons which, if applied generally, would not frustrate the central statutory purposes of eradicating discrimination throughout the economy and making persons whole for injuries suffered through past discrimination." Albemarle, 422 U.S. at 421, 95 S.Ct. at 2373.
 
 
 22
 Reserve contends that Judge Marcus abused his discretion in awarding back pay on Sennello's "speculation" and in "failing to give the correct effect to [his] own factual and legal conclusions on the issue of mitigation of damages."
 
 
 23
 Reserve suggests Sennello could have avoided all speculation by discovery of Reserve's business records showing salary scales during the relevant period, but Sennello's evidence was sufficient to provide a reasonable estimate, and whether she could have more accurately estimated back pay is therefore irrelevant. Reserve simply ignores most of Judge Marcus' thorough discussion of the issue, and unsuccessfully attempts to distinguish Johnson v. Goodyear Tire & Rubber Co., 491 F.2d 1364, 1380 (5th Cir.1974) in which our predecessor court stated: "[M]any equitable considerations will enter into any resolution of entitlement, but onerous and speculative limitations should not be utilized as a bar to [Title VII's] restoration process." There was clearly no abuse of discretion in using Sennello's earnings from her final forty eight months as a basis on which to determine an appropriate back pay award.
 
 
 24
 The problem with Reserve's mitigation argument, fatal here to its assertion that an abuse of discretion occurred, is that it distorts the facts found by the district court and the court's application of the law to those facts. Our review of the record, Judge Marcus' opinion, and Reserve's arguments uncovers no time in Sennello's post-termination employment history after which the law of this Circuit requires the "termination" sought by Reserve of Sennello's right to back pay. Judge Marcus did give the correct effect to his findings and conclusions in mitigating Reserve's damages by reducing the baseline back pay amount. That Reserve disagrees with the size of the reduction fails utterly to convince us that Judge Marcus abused his discretion or was not "guided by sound legal principles" in calculating the quantum of back pay due Sennello. Albemarle, 422 U.S. at 405, 95 S.Ct. at 2365.
 
 IV. CONCLUSION
 
 25
 The district court's judgment is affirmed.
 
 
 26
 AFFIRMED.
 
 
 
 *
 Honorable Howard T. Markey, Chief U.S. Circuit Judge for the Federal Circuit, sitting by designation
 
 
 [1]
 McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), sets forth the test when direct evidence is unavailable. See Perryman v. Johnson Products Co., 698 F.2d 1138, 1141 (11th Cir.1983)
 
 
 [2]
 Because we conclude that Ebert's statements constituted direct evidence of discrimination, we need not and therefore do not address Reserve's argument that Reserve President Pierce's statements are not direct evidence