United States Court of Appeals,

Fifth Circuit.

No. 94-11137

Summary Calendar.

Rose Marie RAY, Plaintiff-Appellant,

v.

TANDEM COMPUTERS, INC., Defendant-Appellee.

Sept. 11, 1995.

Appeal from the United States District Court for the Northern District of Texas.

Before POLITZ, Chief Judge, DUHÉ and BARKSDALE, Circuit Judges.

POLITZ, Chief Judge:

Rose Marie Ray appeals the entry of summary judgment in favor of her former employer, Tandem Computers Inc., on her claims of sex and age discrimination and retaliation. We affirm.

*Background*

Ray, a white female born in 1941, joined Tandem in 1982 as a sales representative. Initially her sales were low, but her performance improved over time, resulting in company recognition and several awards.

In September of 1988 Ray was placed under the supervision of Keith Keister in Tandem's Dallas office. Shortly thereafter, one of Tandem's major clients, MoneyMaker/TransFirst, requested that Ray be removed from its account after she had an argument with one of their representatives. Tandem reassigned the account to John Koenigs, a transfer which Ray viewed as sex discrimination notwithstanding the fact that she had recommended another male as

1

a replacement. Ray disputed the reassignment and Tandem's failure to reserve in her favor all of the commissions earned within 90 days of the reassignment. Ray complained to Keister's superiors and then confronted him demanding an explanation. Keister allegedly yelled that he was tired of her going over his head and that she should get out of his office. Keister later apologized for his behavior but criticized Ray for her conduct, including her "crying wolf" about discrimination. Tandem ultimately concluded that Ray was entitled to a 75/25 split of the commissions and corrected the original award.

In June of 1989 Koenigs transferred to California and it became necessary to reassign Tandem's account with the Mobil Oil Company. Keister initially reassigned this account to Dana Alagna, a male younger than Ray, but later reassigned the account to Ray. Keister then escorted Ray to an introductory lunch meeting with a Mobil representative at Hooters, a restaurant/bar known more for the attire of its service personnel than its cuisine. Ray complained to Keister that they should not do business in a bar, and informed his superiors that the atmosphere was inappropriate for female sales representatives.

When Koenigs returned to the Dallas office in 1991, Keister reassigned the Mobil account to him, granting Ray an unprecedented one year reservation of commissions. In place of the Mobil account Tandem reassigned several accounts to Ray. Ray protested the reassignment of the Mobil account but was told by an upper level manager that Koenigs was the "better man for the job" because of

2

his well developed contacts within that organization. Incensed, Ray gave the manager a most vulgar suggestion and stormed out of his office.[1]

While this acrimonious relationship with Tandem was developing, Ray's performance suffered. Her sales dropped significantly in 1989, largely due to the hostile takeover of her largest client. She asked for, and received, a reduction in her quota for 1989, but failed to meet the reduced revenue goal. In each of the next three years, Ray again failed to meet her sales quota, sometimes by nearly one-half.

In February of 1992 Tandem placed Ray on a Performance Improvement Plan or "PIP" for a 90 day period. The plan included revenue goals, established by Ray, and once a week "coaching" meetings with her immediate supervisors. After Ray failed to meet the goals of her PIP, Tandem terminated her employment. Ray subsequently filed the instant suit alleging sex[2] and age[3] discrimination in the terms and conditions of her employment and in Tandem's termination of her employment, retaliation[4] in her

---

[1]In late 1991, Ray filed a formal, internal complaint alleging sex, but not age, discrimination in her treatment by the company since 1988. The company investigated the charge, found no evidence of discrimination and so informed Ray in January of 1992.

[2]Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.

[3]Age Discrimination in Employment Act, as amended, 29 U.S.C. § 621 et seq.

[4]Both Title VII and the ADEA prohibit an employer from retaliating against employees who exercise their rights under the respective act. *See* 42 U.S.C. § 2000e-3(a); 29 U.S.C. § 623(d).

placement on the PIP and in her termination, and various state law tort claims not relevant to this appeal.

Tandem moved for summary judgment, offering evidence that its adverse employment actions were based on legitimate nondiscriminatory reasons, namely Ray's lackluster performance. Ray contended that these reasons were pretextual and that various work-related incidents and remarks by her supervisors demonstrated Tandem's discriminatory animus in the challenged actions. The district court ruled that Ray failed to provide sufficient evidence that Tandem's articulated legitimate nondiscriminatory reasons were pretexts for either sex or age discrimination or retaliation.[5] Ray timely appealed.

*Analysis*

We review the district court's grant of summary judgment *de novo*. "Summary judgment is proper when no issue of material fact exists and the moving party is entitled to judgment as a matter of law. In determining whether summary judgment was proper, all fact questions are viewed in the light most favorable to the non-movant."[6]

Ray claims that Tandem discriminated on the basis of sex in

---

[5]The district court ruled that Ray's claims based on incidents occurring prior to August 22, 1991 were timed-barred. *See* 42 U.S.C. § 2000e-5(e); 29 U.S.C. § 626(d)(2). Ray does not appeal this ruling.

[6]*Moore v. Eli Lilly Co.,* 990 F.2d 812, 815 (5th Cir.) (citations omitted), cert. denied, --- U.S. ----, 114 S.Ct. 467, 126 L.Ed.2d 419 (1993).

4

reassigning her accounts to younger males, in denying her promotions and transfers within the company, in denying her requests for increased compensation, in placing her on a PIP, and ultimately in discharging her. For the purposes of today's disposition, we assume, as did the district court, that Ray established a *prima facie* case of sex discrimination on these allegations.[7] Under the burden shifting framework established in *McDonnell Douglas Corp. v. Green*[8] and its progeny, this showing requires Tandem to articulate a legitimate nondiscriminatory reason for its adverse employment actions.

In its motion for summary judgment Tandem offered evidence that it based its employment decisions upon neutral performance-related factors. Tandem maintained that smaller accounts were regularly taken from all senior sales representatives, whether male or female, and given to younger sales representatives who were paid lower commissions. This allowed the more senior representatives to focus their efforts and experience on more lucrative and difficult accounts. Tandem maintained that Ray's poor performance from 1989 until her discharge motivated its pay increase and promotion decisions,[9] the decision to place her on the PIP, and its decision to terminate her employment. Finally,

---

[7]*See Davis v. Chevron U.S.A. Inc.,* 14 F.3d 1082 (5th Cir.1994) (outlining the *prima facie* case for discrimination claims).

[8]411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

[9]Tandem also notes that the employees against which Ray seeks to compare salaries held different titles and job responsibilities and were paid on a different scale.

Tandem maintained that Ray's request for a transfer to another office was not processed after Ray told her supervisor that she did not want to move. In articulating these reasons, Tandem met its burden of production.[10]

We thus turn to the ultimate question: whether Ray has provided sufficient summary judgment evidence that Tandem discriminated against her on the basis of sex.[11] Ray seeks to establish that Tandem's proffered reasons are pretexts for discrimination by demonstrating discriminatory animus in certain pre-limitations period actions.[12] First, she contends that the pre-limitations period assignment of the lucrative Mobil Oil account to Koenigs and a nonproducing account to her demonstrates Tandem's sexual bias in the workplace. We are not persuaded. The record reflects that Koenigs had significantly better relations with Mobil than did Ray and that she requested the assignment of the questioned account. Her subjective belief that discriminatory intent motivated these actions is insufficient to establish a material question of fact regarding Tandem's motives.[13]

Next, Ray contends that her supervisor's scheduling of a

---

[10]*St. Mary's Honor City v. Hicks,* --- U.S. ----, ----, 113 S.Ct. 2742, 2748, 125 L.Ed.2d 407 (1993) ("By producing evidence (whether ultimately persuasive or not) of nondiscriminatory reasons, petitioners sustained their burden of production.").

[11]*Armstrong v. City of Dallas,* 997 F.2d 62 (5th Cir.1993).

[12]We note that time-barred acts can be used as evidence of discriminatory intent in later actions. *See Cortes v. Maxus Exploration Co.,* 977 F.2d 195 (5th Cir.1992) (citing cases).

[13]*Molnar v. Ebasco Constructors, Inc.,* 986 F.2d 115 (5th Cir.1993).

lunch meeting at Hooters restaurant is evidence of Tandem's sexually discriminatory animus in the challenged actions.[14] Although we agree that scheduling a business meeting for mixed company at Hooters was grossly unprofessional and may be relevant to a supervisor's motives in employment actions, it is not sufficient to support a discrimination verdict absent some proof of a causal connection between the incident and the adverse employment action.[15]

Ray also contends that this discriminatory environment is further demonstrated by Keister's alleged statement four years prior to her discharge that he was going to get rid of "the cunt in the office." While the repeated use of this crude and contumelious appellation might well support a finding of discriminatory animus,[16] a single comment, made several years prior to the challenged conduct, is a stray remark too remote in time to support an inference of sex discrimination in later employment actions.[17] Ray also points to Tandem supervisor Jerry Earle's statement that

---

[14]We underscore that Ray expressly disavows raising any hostile environment or sexual harassment claims.

[15]*Moore.* Ray also points to an incident on a company golf outing where another female Tandem employee attempted to discourage Ray from playing golf. This incident suggests only that another Tandem employee was mistaken in assuming that Ray did not play golf; it does not support an inference of sex discrimination.

[16]*Brown v. East Mississippi Elec. Power Ass'n,* 989 F.2d 858 (5th Cir.1993) (concluding that routine use of the word "nigger" was direct evidence of discrimination).

[17]*See Armendariz v. Pinkerton Tobacco Co.,* 58 F.3d 144 (5th Cir.1995).

Koenigs was the "better man for the job" when explaining to Ray why the Mobil account was being reassigned. The record reflects that Tandem had an ample basis to conclude that Koenigs was better suited for the position because of his strong contacts and extensive experience with key Mobil personnel. Earle's articulation of this fact using the common but clearly dated phrase "better man for the job" does not support a finding of discriminatory animus in the challenged actions.[18]

Ray's remaining evidence of discrimination is equally unpersuasive. Although she complains about Tandem's initial denial of a reservation of commissions following her removal from the MoneyMaker account and Tandem's later placement of her on PIP, she fails to controvert Tandem's evidence that other similarly situated employees, both male and female, were treated the same.[19] The district court's entry of summary judgment for Tandem on this claim must be affirmed.

Ray next contends that the district court erred in entering summary judgment for Tandem on her age discrimination claims.

[18]*See Guthrie v. Tifco Industries,* 941 F.2d 374 (5th Cir.1991), cert. denied, 503 U.S. 908, 112 S.Ct. 1267, 117 L.Ed.2d 495 (1992). *See also Neuren v. Adduci, Mastriani, Meeks & Schill,* 43 F.3d 1507 (D.C.Cir.1995) (holding use of term "bitch" in employee evaluation not to support finding of discriminatory animus when considered in conjunction with evidence indicating that evaluation was based on gender-neutral factors).

[19]Ray's claims of discrimination are undermined by her statement that Keister was an even-handed harasser, treating all of his employees poorly. Title VII does not exist to punish poor management skills; rather, it exists to eliminate certain types of bias in the workplace. *See Bienkowski v. American Airlines, Inc.,* 851 F.2d 1503 (5th Cir.1988).

8

Again we assume, *arguendo,* that Ray established a *prima facie* case of discrimination.[20]  Ray fails, however, to demonstrate that Tandem's articulated reasons for its actions were pretextual. Although Ray makes several conclusionary assertions that her supervisors showed preference to younger sales representatives, she provides no evidence of this preference other than her own assertions that older workers are routinely "forced out" by Tandem. We conclude that Ray's bald assertions of age discrimination are inadequate to permit a finding that proscribed discrimination motivated Tandem's actions against her.[21]

Finally, Ray contends that she provided sufficient evidence to support a finding that Tandem retaliated against her because of her complaints of sex discrimination when it placed her on a PIP and terminated her employment.  Ray has made out a sufficient *prima facie* case of retaliation;[22]  she filed a sex discrimination complaint with Tandem's human resources department and was placed on a PIP shortly thereafter.[23]  As with other Title VII claims, the

---

[20]We apply the same analysis to Ray's age claim that we applied to her sex discrimination claim.  *See Burns v. Texas City Refining, Inc.,* 890 F.2d 747 (5th Cir.1989).

[21]*Molnar.*

[22]To establish a *prima facie* case of retaliation, Ray must demonstrate:  "(1) that she [ ] engaged in an activity protected by Title VII, (2) that an adverse employment action occurred; and (3) that there was a causal connection between the participation in the protected activity and the adverse employment action."  *EEOC v. J.M. Huber Corp.,* 927 F.2d 1322, 1326 (5th Cir.1991) (quoting *McMillan v. Rust College, Inc.,* 710 F.2d 1112, 1116 (5th Cir.1983)).

[23]*See Payne v. McLemore's Wholesale & Retail Stores,* 654 F.2d 1130 n. 13 (5th Cir.1981) (allowing inference of causation

9

establishment of a *prima facie* case of retaliation shifts the burden to Tandem to articulate a legitimate nonretaliatory reason for its adverse actions. If done, Ray must then prove that Tandem's reasons are pretextual and that "but for" her protected activities, she would not have been subject to the adverse actions.[24]

Tandem justified its placement of Ray on a PIP on the basis that she had failed to meet her sales quota in every year since 1989. We therefore turn to Ray's evidence to determine whether a jury could find that "but for" her complaints of discrimination, she would not have been placed on the PIP or ultimately discharged. Ray relies principally upon an alleged statement by Keister to Ray shortly after she had been placed on the PIP to the effect that "if you had not gone crying to your friends in Cupertino (Tandem's headquarters), you would not be in the position you are in." She characterizes this statement as an admission that her complaints resulted in her placement on the PIP.

Ray accords too much significance to this oblique statement. The record reflects that Ray made numerous complaints to Keister's supervisors listing a multitude of perceived problems explaining her poor performance, only one of which was discrimination. When considered in light of this history, this single vague statement is

---

based on employer's knowledge of activities and temporal proximity of this knowledge and the adverse action), cert. denied, 455 U.S. 1000, 102 S.Ct. 1630, 71 L.Ed.2d 866 (1982).

[24]*Shirley v. Chrysler First, Inc.,* 970 F.2d 39 (5th Cir.1992); *Jack v. Texaco Research Center,* 743 F.2d 1129 (5th Cir.1984).

susceptible of several interpretations, most of which are innocuous. We have held that such statements are insufficient to avoid summary judgment on discrimination claims.[25] We now likewise hold with respect to claims of retaliation. This conclusion is supported by Tandem's history of tolerance for Ray's claims of discrimination since they began in 1983.[26]

Ray also points to a 1988 statement by Keister where he observed that Ray frequently "cried wolf" regarding discrimination. Even if we construe this observation as evincing disdain for Ray's exercise of her protected rights, this remark occurred almost four years prior to the alleged retaliation and is too remote to support a finding that her complaints of discrimination were the "but for" cause of her placement on the PIP or her termination.[27] The same is true for Keister's alleged remark in 1988 that he wanted "to get rid of Rosie." We also note that each of the remarks Ray relies on to demonstrate pretext for retaliation is attributable to Keister. Tandem offered uncontroverted evidence that Keister was not solely responsible for the decision to place Ray on a PIP and that he had no input into the decision to terminate her. Under these circumstances, we perforce conclude that Ray failed to demonstrate

---

[25]*See Guthrie.*

[26]*See Grizzle v. Travelers Health Network, Inc.,* 14 F.3d 261 (5th Cir.1994). Ray admits that she had complained to Tandem about Keister as early as 1989 and sought to have him fired on numerous occasions.

[27]*See Waggoner v. City of Garland, Tex.,* 987 F.2d 1160 (5th Cir.1993) (finding statements too remote to support finding of discrimination under ADEA); *Armendariz.*

11

that Tandem's proffered reasons for its adverse employment actions were pretexts for illegal retaliation or that "but for" her complaints of discrimination, she would not have suffered these adverse employment actions.[28]

The judgment appealed is AFFIRMED.

---

[28]*Cf. McMillan* (upholding summary judgment for employer on retaliation claims despite open criticism by employer of employee's discrimination complaints when clear that employee would have suffered adverse action in any event).