**Debbie D. MOORE, Plaintiff,**

v.

**ALABAMA STATE UNIVERSITY, et al., Defendants.**

No. Civ. A. 96–A–792–N.

United States District Court, M.D. Alabama, Northern Division.

Sept. 23, 1997.

As Corrected Sept. 26, 1997.

Joseph P. VanHeest, Montgomery, AL, for Plaintiff.

Solomon Seay, Mark Englehart, Anita Kelly, Kenneth L. Thomas, Montgomery, AL, for Defendants.

## MEMORANDUM OPINION AND ORDER

ALBRITTON, District Judge.

### I. INTRODUCTION

This cause is before the court on a Motion for Summary Judgment filed by defendants Alabama State University ("ASU") and Dr. Roosevelt Steptoe ("Dr.Steptoe") (collectively referred to as "the Defendants") on June 27, 1997. Debbie D. Moore, "the Plaintiff," filed this action on May 10, 1996. In her Complaint and amendment thereof, the Plaintiff alleges that the Defendants unlawfully discriminated against her on the basis of sex, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII").[1]

Defendants have moved for summary judgment on the grounds that (1) Plaintiff has not come forward with sufficient evidence so as to constitute a prima facie case, (2) Plaintiff has not come forward with evidence that Defendants' asserted non-discriminatory reasons are pretextual, and (3) gender played no part in the selection process. Defendants' Motion for Summary Judgment is, for reasons discussed herein, due to be DENIED.

---

1. Plaintiff's case against Steptoe is only against Steptoe in his official capacity. Plaintiff may not bring a claim against Steptoe under Title VII in his individual capacity. In the case of *Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir. 1991), the Eleventh Circuit stated that "[i]ndividual capacity suits under Title VII are ... inappropriate. The relief granted under Title VII is against the *employer*, not individual employees whose actions would constitute a violation of the Act." (emphasis in original). *See also Smith v. Lomax*, 45 F.3d 402, 403 n. 4 (11th Cir.1995). In *Mason v. Stallings*, 82 F.3d 1007 (11th Cir. 1996), the Eleventh Circuit explained that the purpose of including the language "any agent of such a person" in the definition of employer was to "ensure *respondeat superior* liability of the employer for the acts of its agents." *Id.* at 1009 (emphasis in original).

## II. STANDARD FOR SUMMARY JUDGMENT

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2550, 91 L.Ed.2d 265 (1986).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323, 106 S.Ct. at 2553. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322–324, 106 S.Ct. at 2552–2553.

If the movant succeeds in demonstrating the absence of a material issue of fact, the burden shifts to the non-movant to establish, with evidence beyond the pleadings, that a genuine issue material to the non-movant's case exists. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991); *see also* Fed.R.Civ.P. 56(e) ("When a motion for summary judgment is made and supported . . . an adverse party may not rest upon the mere allegations or denials of [his] pleading, but [his] response . . . must set forth specific facts showing that there is a genuine issue for trial.").

What is material is determined by the substantive law applicable to the case. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2509–2510, 91 L.Ed.2d 202 (1986). A dispute of material fact "is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248, 106 S.Ct. at 2510 (1986). The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). It must present "affirmative evidence" of material factual conflicts to defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 257, 106 S.Ct. at 2514–2515. If the non-movant's response consists of nothing more than conclusory allegations, the court must enter summary judgment for the movant. *See Peppers v. Coates*, 887 F.2d 1493 (11th Cir.1989).

The evidence presented by the nonmovant must be believed and all justifiable inferences must be drawn in its favor. *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513–2514. After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there remains no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

With these rules and principles of law in mind, the court will determine whether summary judgment is appropriate or whether there exist genuine issues of material fact that should properly proceed to trial for resolution.

## III. FACTS

The facts construed in the light most favorable to the non-movant plaintiff are as follows:

ASU is a four-year state university in Montgomery, Alabama, and employs more than 500. Dr. Steptoe is employed by ASU as Vice President for Academic Affairs and held this position at all times relevant to this action.

ASU hired the Plaintiff in September 1980. *Deposition of Debbie D. Moore ("Moore Depo.") at 26.* Between that date and March 1994, the Plaintiff was employed continuously at ASU in the Admissions Office.[2] In 1988,

---

2. ASU had three different names for its admissions office during the Plaintiff's employment

there. In Fall 1985, the admissions office's name was changed from the University Admis-

Moore was promoted to the position of Admissions Staff Assistant and functioned as a "second in command" of the office. *Moore Depo. at 61.* The position of Admissions Office Director ("Director") became vacant in August 1990. *See ASU announcement of Position Available; Def's Exh. 1.* While the position was vacant, Plaintiff took on increased duties of oversight at the behest of Dr. Steptoe and another. *Moore Depo. at 73–74.* Defendants also state that Plaintiff had increased responsibilities; specifically, they assert that she shared the duties of Director with another person. *See Deposition of Roosevelt Steptoe ("Steptoe Depo.") at 246.*

Ms. Moore desired to become the Director of the Admissions Office at ASU. Her contentions in this lawsuit all relate to interference by Dr. Steptoe in her acquisition of this job. Plaintiff contends that Steptoe did so out of discrimination and discusses two specific instances in which Steptoe evidenced this discriminatory animus. The first occurred in March or April 1989. Plaintiff was confronted by Steptoe while walking across campus. Steptoe, noticing the Plaintiff's pregnant condition, stated "I was going to put you in charge of that office, but look at you now." *Moore Depo. at 84–85.* Later Plaintiff approached Steptoe about seeking the position, when she learned that Steptoe had asked the present director to step down. *Moore Depo. at 98–99.* She was told by Steptoe, however, that he would not consider her because she was married with a child. *Id.* Steptoe allegedly added that he believed that a woman should stay at home with her family, and after speaking with a group, had come to the conclusion that the Director's job entailed too much traveling for a married mother like Moore. *Id. at 99.*

Steptoe fills an important role in the hiring process at ASU. This fact is important to Moore's case for two reasons: it explains why the direct evidence of discriminatory statements by Steptoe is significant, and helps to lay out a circumstantial case of discrimination. Steptoe was responsible for

appointing the committee which screened and interviewed the applicants. *Steptoe Depo. at 155.* He was also responsible for receiving the applications from ASU's personnel office, and furnishing those applications to the committee. *Deposition of Arthur Pollard at 12–13.* Steptoe also made the final decision as to the committee's recommendations. *Steptoe Depo. 163–165.* He even had power to ask persons at the University to leave their posts, and often convinced them to do so. *Steptoe Depo. at 128–129 (asking Barnett to leave the post of Director); Steptoe Depo. at 59 (asking Singleton to leave a post); id. at 85–86 (Campbell); id. at 102–03 (dean of the School of Graduate Studies).*

In September 1992, Defendant Steptoe appointed a committee to screen applications for the position of Admissions Director and forward to his office at least two names for consideration. *Memorandum of Steptoe, September 2, 1992.* The Committee, through its Chair William Brock, eventually forwarded three names to Steptoe. *Memorandum of Brock to Steptoe, September 23, 1992 ("Brock Memo.").* The Committee graded each of the applicants according to an "ASU Screening Form," with Samuel Mitchell receiving a 99, Plaintiff an 81, and a third person a 74. *Brock Memo.* The Committee commended Mitchell for his "experience, training, and leadership abilities," which the Committee found to be present in Mitchell's records and interview. *Id.* The Committee went on to note that Moore was experienced, but lacked leadership skills. The committee based this opinion on Moore's interview. *Id.* The Committee did not discuss the basis for the third person's score. *Id.* The Committee Chair could not explain why the third person's qualifications were not discussed. *Deposition of William Brock at 34.*

After reviewing the recommendations of the Committee, Dr. Steptoe decided not to fill the position. He did not think that Mitchell, the recommended person, was capable of doing the job. *Steptoe Depo. 163–165.* Steptoe did not, however, hire the next per-

---

sions Office to the Office of Enrollment Management. In mid-September 1992, the admissions office's name was changed to the Office of Ad-

missions and Recruitment. *See Plaintiff's Exh. 9.* For simplicity, the court refers to these names collectively as "the Admissions Office."

son in line, Moore, or even the third person in line. Instead, on or about January 1993, ASU reannounced a vacancy in the Director position. *Plaintiff's Exh. 6B.*

Plaintiff insists that she applied for the job a second time, in 1993, carrying the application to ASU's personnel office. *Moore Depo. 121–123.* The Defendants contend, however, that Moore did not apply in 1993, and support this assertion with several facts. The only application of Moore for the position of Director that may be found in ASU's personnel office is dated July 31, 1990, three years prior to the hiring of the Director. *Plaintiff's Exh. 10.* The application states on its face, in bold, that it will only "remain active for two (2) years." *Id.* No one contests that this period had passed by the time that the vacancy was announced for the second time. Also, Plaintiff cannot furnish a copy of the application she allegedly provided in 1993. *Id. at 122:2–4.* Furthermore, the official list of "screening applicants/inquiries" for the position, kept by the ASU Personnel and Human Relations Department, does not include her name. *Plaintiff's Exh. 7.*

Plaintiff's assertion that she did apply is also strongly supported by several facts, however. Her 1990 application, as provided by ASU during discovery, has attached to it a copy of her resume which includes activities done in 1992 and 1993. *Plaintiff's Exh. 10.* Also, the application has attached to it two letters of recommendation which are dated April of 1993, and stamped received by the ASU Personnel Office in early May 1993. *Id.* Plaintiff's testimony is also supported by the deposition of Arthur Pollard, an important figure in the ASU Personnel Office, who seems confused over whether Moore would have been required to turn in a second application. *Pollard Depo. at 33–34.* Pollard testified that if an application was furnished in 1993, it should have been forwarded to Steptoe. *Pollard Depo. at 40–41.*

Steptoe was responsible for conveying any application of Moore to the committee. *Pollard Depo. at 12–13.* Moore's application, however, apparently was not received or reviewed by the committee. Dolores Crump, a member of the committee, testified that she did not recall reviewing an application by Moore in 1993. *Deposition of Dolores Crump at 43.* Moore is not aware of any specific acts of influence by Steptoe on this committee, but she knows that Steptoe has influenced committees before. *Moore Depo. at 121.*

The screening committee went on to recommend Mr. Billy Brooks for the position. *Memo of Brock to Steptoe, September 15, 1993.* Brooks was never interviewed, nor was anyone else interviewed in 1993, *Crump Depo. at 43, Deposition of Ruby Wooding at 24, Deposition of Billy Brooks at 32.* No interviews were done even though it was the usual practice of committees to conduct such interviews. *Brock Depo. at 33.* Members of the Committee deny that gender ever entered into their decision-making. *See Affidavits of Dolores H. Crump at 4; Doris Vaugn at 4; Ruby Wooding at 4.* Plaintiff testified in her deposition that she had no direct evidence of bias on the part of the committee members. *Moore Depo. at 119.*

In September 1993, the Director position was filled by Billy R. Brooks ("Brooks"). *Affidavit of Billy R. Brooks at 1.* Plaintiff contends that Mr. Brooks was less qualified than she. Mr. Brooks had been working as ASU's Director of Financial Aid since 1989, and had held three other positions with ASU which involved contact with students and alumni, but had never worked in admissions or recruiting. *Application of Billy R. Brooks; Plaintiff's Exh. 11.* Brooks' duties with the Financial Aid Department sometimes included recruiting trips. *Affidavit of Billy R. Brooks.* Brooks had experience selling insurance, had been a counselor at a junior college in Alexander City, Alabama, *Application of Billy R. Brooks,* and had marketing experience with J.C. Penney, *Brooks Affidavit.* Testimony given by Steptoe says that Brooks' position in financial aid was related to the functions of recruiting, and made him familiar with the functions of office. *Steptoe Depo. at 201.*

Defendants argue that Brooks was qualified based on his above experience. In addition, Defendants argue that Brooks was selected by a committee after an appropriate screening. *Memo of Brock to Steptoe, September 15, 1993; Def's Exh. 8.* Ruby Wood-

ing, a member of the committee, submitted an affidavit in which she stated that the committee was looking for someone who had "previous supervisory experience and ... a strategy for recruiting students;" Wooding added further that Moore did not satisfy the committee (in 1992) and that Brooks did. *Affidavit of Wooding at 2–3.* Other committee members submitted similar affidavits. *See Affidavits of Doris Vaughn and Dolores Crump.* Affidavits submitted by members of the screening committee state that Mrs. Moore's 1992 interview was a failure in that she did not communicate an effective plan for the department. *See Affidavit of Dolores H. Crump at para. 6; Affidavit of Doris Vaughn at 3.*

The Plaintiff maintains that she first learned that the position had been filled on October 5, 1993, when Brooks announced his acceptance of the position at an Admissions Office staff meeting. The Plaintiff claims that because of Brooks' appointment as Admissions Office Director, the "[P]laintiff was placed in a position that was so intolerable that a reasonable person in [the P]laintiff's position would have felt compelled to transfer out of the [Admissions Office]."

## IV. DISCUSSION

A Plaintiff may base a Title VII claim on either direct or circumstantial evidence. Moore has presented direct evidence of discrimination sufficient to withstand summary judgment, as well as a prima facie case based on circumstantial evidence sufficient to withstand summary judgment. Either would be sufficient alone to survive Defendant's Motion for Summary Judgment.

### A. Direct Evidence

Direct evidence of unlawful employment discrimination consists of statements by a person with control over the employment decision "sufficient to prove discrimination without inference or presumption." *See Clark v. Coats & Clark, Inc.,* 990 F.2d 1217, 1223 (11th Cir.1993) (citing *Carter v. City of Miami,* 870 F.2d 578, 581–82 (11th Cir.1989)). The statements must reflect a "discriminatory or retaliatory attitude correlating to the discrimi-

nation or retaliation complained of by the employee." *Caban–Wheeler v. Elsea,* 904 F.2d 1549, 1555 (11th Cir.1990). Further, the statements "must be made by a person involved in the challenged decision." *See Trotter v. Board of Trustees of Univ. of Ala.,* 91 F.3d 1449, 1453–54 (11th Cir.1996) (citations omitted). Evidence is not direct when the statement only "suggests discrimination" or "is subject to more than one interpretation." *Merritt v. Dillard Paper Co.,* 120 F.3d 1181, 1189–90 (11th Cir., 1997). Thus, "stray remarks ... statements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process itself" are not direct evidence. *Price Waterhouse v. Hopkins,* 490 U.S. 228, 277, 109 S.Ct. 1775, 1804–1805, 104 L.Ed.2d 268 (1989) (O'Connor, J., concurring).

Under the burdens of proof applicable in a direct evidence case, if a plaintiff presents direct evidence of discrimination, the burden shifts to the defendant to prove by a preponderance of the evidence that it would have made the same employment decision absent any discriminatory intent. *Wall v. Trust Co. of Ga.,* 946 F.2d 805, 809 (11th Cir.1991) (citations omitted). The Eleventh Circuit has characterized this as a "heavier burden" than needed in a case based on circumstantial evidence. *Miles v. M.N.C. Corp.,* 750 F.2d 867, 875. As explained in *Lee v. Russell County Bd. of Educ.,* 684 F.2d 769, 774 (11th Cir.1982), where the plaintiff has offered direct evidence of intentional discrimination:

"The [d]efendant cannot rebut this type of showing of discrimination simply by articulating or producing evidence of legitimate, nondiscriminatory reasons. Once an unconstitutional motive is proved to have been a significant factor in an employment decision, defendant can rebut only by proving by a preponderance of the evidence that the same decision would have been reached even absent the presence of that factor."

Accordingly, the "[p]roduction of nondiscriminatory reasons is not enough in a direct evidence case; the defendant must prove that there was a separate, racially neutral reason for its [actions]." *E.E.O.C. v. Alton*

*Packaging Corp.,* 901 F.2d 920, 925 (11th Cir.1990).

■ The statements of the Defendant in this case constitute direct evidence of discrimination. They involve a direct statement by an official with decisionmaking power that he intends to unlawfully discriminate: once, telling the Plaintiff that he could not promote her because she was pregnant; later, telling her that she could not be considered for the promotion because she was a married mother. Neither statement is subject to multiple interpretations, and neither requires any leap of logic or inference by a jury to conclude that discrimination occurred. *See Haynes v. W.C. Caye & Co.,* 52 F.3d 928, 930 (11th Cir.1995) (holding that statement that "a woman was not competent enough to do this job" constitutes direct evidence); *Sennello v. Reserve Life Ins. Co.,* 872 F.2d 393, 394–95 (11th Cir.1989) (holding that statement that "we can't have women in management" constitutes direct evidence); *Thompkins v. Morris Brown College,* 752 F.2d 558, 561–63 (11th Cir.1985) (holding that statements by college administrators that men had families and needs different from women and that administrator saw no need for a female to have a second job were direct evidence)

In addition, the statements were made by someone who had an important role in deciding who would be the Director of Admissions at ASU. Steptoe admitted that he could ask officials to leave their post. Steptoe also admitted that he had the ability to decide if the committee's recommendations were acted on; after all, he nipped in the bud the committee's recommendation of Mitchell. He was responsible for appointing the committees, and responsible for forwarding the applications to the committee. Furthermore, his statements to Moore, if taken as true, are evidence of his own impression of his ability to influence the choice of Director. There is sufficient evidence that Steptoe is a decisionmaker.

Defendants point to the Fifth Circuit decision of *Ray v. Tandem Computers, Inc.,* 63 F.3d 429, 436 (5th Cir.1995), where a Plaintiff's direct evidence of discriminatory statements were held to be insufficient to survive summary judgment. The court held that the statements, which occurred four years prior to the adverse employment decision, were "too remote" in time to support her charge of discrimination. *Id.* Indeed, courts within the Eleventh Circuit have held that comments which are "temporally remote" from the adverse decision cannot be direct evidence. *See Allen v. City of Athens,* 937 F.Supp. 1531, 1543 (N.D.Ala.1996). The court notes that in *Allen,* however, as in *Ray,* the comments were also less closely related to the eventual employment decision than here, in addition to being temporally remote. *See Allen,* 937 F.Supp. at 1543 (remark was about matter "unrelated" to eventual decision); *Ray,* 63 F.3d at 436 (remark was very general and was made by person who did not have authority to terminate plaintiff). The statements in the present case, by contrast, precisely correlate to the discriminatory action which the defendant is alleged to have undertaken. Furthermore, the statements were made by a person who is shown to have great authority over the prior Director's choice to leave, and the eventual decision to not promote Mrs. Moore. *Ray* and *Allen* are easily distinguished.

■ Defendants have offered evidence that they would have reached the same decision absent any illegal discrimination. Specifically, Defendants argue that in any event the committee did not have Moore's application before it, and even if the committee did have the application, the committee still would not have selected Plaintiff. Unlike a circumstantial evidence case, this does not shift the burden to the Plaintiff to present evidence of pretext. Even if it did, the evidence submitted by the Plaintiff would be sufficient to suggest pretext and to make a jury issue. *See discussion of pretext below.* Here, the Defendant has merely shown that there will be a jury issue as to whether, if the jury finds that gender discrimination was a factor in the failure to promote Plaintiff, the Defendant has met its burden of proving that it would not have promoted the Plaintiff anyway. Therefore, the court concludes that there are genuine issues of fact concerning the Plaintiff's claim of wrongful failure to

promote, and summary judgment is inappropriate.

## B. Circumstantial Evidence

■ Where a Plaintiff has presented direct evidence of discrimination, it is actually unnecessary for the Plaintiff to also present circumstantial evidence of discrimination. *Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 121, 105 S.Ct. 613, 621–622, 83 L.Ed.2d 523 (1985). Plaintiff has, nevertheless, presented such evidence here. The court notes that even if Plaintiff could not defeat summary judgment based on her claims of direct evidence of discrimination, she could defeat summary judgment based on her circumstantial evidence.

■ In order to proceed on a circumstantial evidence claim, the plaintiff must prove by a preponderance of the evidence a prima facie case of discrimination. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973); *Texas Dep't of Comm. Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 1093–1094, 67 L.Ed.2d 207 (1981). In a failure to hire case, this may be done by showing that (i) she is a member of a protected class; (ii) she applied for and was qualified for the position; (iii) despite her qualifications, she was rejected for the position; and (iv) a person not a member of the protected class with equal or lesser qualifications received the position or the position remained open. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824; *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093–1094.

■ Courts dealing with cases alleging discriminatory demotion or discharge modify the prima facie case so that it applies to those types of employment actions as well. *Lee,* 684 F.2d at 773. The modified prima facie case requires a showing that plaintiff, a member of a protected class, was demoted or discharged from a position for which she was qualified and that others outside the class were not so treated or that the plaintiff was replaced by someone not in the protected class. *Id. Accord Weaver v. Casa Gallardo, Inc.,* 922 F.2d 1515, 1525 (11th Cir.1991). Proof of the prima facie case creates a presumption, or a required conclusion in the absence of explanation, "that the employer unlawfully discriminated against the employee." *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 506, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407 (1993).

■ Once the plaintiff proves her prima facie case, the burden then shifts to the employer to state a legitimate, non-discriminatory reason for not hiring her. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824; *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093–1094. This is a burden of production, not persuasion. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824; *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093–1094. The defendant must produce admissible evidence which, if believed by the trier of fact, would support a conclusion that the employment action was not the product of unlawful discrimination. *St. Mary's Honor Ctr.,* 509 U.S. at 506–508, 113 S.Ct. at 2747. This burden, like the plaintiff's prima facie case, is easily met. *Howard v. B.P. Oil Co.,* 32 F.3d 520, 524 (11th Cir.1994). Once a defendant meets his burden of producing a legitimate non-discriminatory reason for the employment decision, the presumption raised by the prima facie case is rebutted and drops from the case. *Hairston v. Gainesville Sun Publishing Co.,* 9 F.3d 913, 919 (11th Cir.1993).

■ If the defendant comes forward with a legitimate nondiscriminatory reason for the employment decision, the plaintiff must then present some evidence, which may include the previously produced evidence establishing the prima facie case, sufficient to permit a reasonable fact finder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision. *Combs v. Plantation Patterns,* 106 F.3d 1519, 1528 (11th Cir.1997). The plaintiff may seek to demonstrate that the proffered reason was not the true reason for employment decision "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095; *Combs,* 106 F.3d at 1534.

Because it is relatively easy for employees to establish a prima facie case and it is similarly simple for employers to articulate some nondiscriminatory reason for the employment decision, most disparate treatment cases turn on a plaintiff's ability to produce comparative, statistical or direct evidence of discriminatory motive. *See Miles v. M.N.C. Corp.*, 750 F.2d 867, 870–75 (11th Cir.1985). Comparative evidence is that which shows employees who were not members of the protected class were treated differently. *Id.* Direct evidence can be statements or admissions by the employer or its agent. *Id.*

"Because the plaintiff bears the burden of establishing pretext [for discrimination], he must present 'significantly probative' evidence on the issue to avoid summary judgment." *Young v. General Foods Corp.*, 840 F.2d 825, 829 (11th Cir.1988) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25, 106 S.Ct. 2548, 2552–2554, 91 L.Ed.2d 265 (U.S.1986)). "Conclusory allegations of discrimination, without more, are not sufficient to raise an inference of pretext or intentional discrimination where [a defendant] has offered extensive evidence of legitimate, nondiscriminatory reasons for its actions." *Young*, 840 F.2d at 830.

The Defendants do not contest that Moore is a member of a protected class. Neither can they contest that the position was eventually filled by a male. Defendants do, however, contest whether Plaintiff ever applied for the job, whether Plaintiff was rejected, whether Plaintiff was qualified, and whether Brooks was less qualified than the Plaintiff. Plaintiff has, however, come forward with evidence sufficient to withstand summary judgment on these issues. In addition, Plaintiff has come forward with evidence sufficient to rebut Defendant's proferred "legitimate, non-discriminatory reasons" for hiring Brooks.

Plaintiff has presented evidence which raises a material issue of fact as to whether she applied. She testified that she applied a second time. Also, the personnel office was admittedly in possession of materials which suggest that she did apply a second time, namely the updated resume and the

recommendations stamped received. Mr. Pollard, ASU's officer responsible for collecting applications, even seemed confused as to whether Moore would be required to submit a second form application in 1993. The attachment of the 1993 resume and recommendations to the 1990 application, present a fact question as to whether Moore applied for the job. The Defendants have evidence to counter this. In any case, however, it is not the job of this court to resolve disputed issues of fact on summary judgment.

Defendants in their brief rely heavily on an argument that ASU may not be liable because Plaintiff has presented no evidence that the committee had Moore's application before it in 1993. Plaintiff's contentions are greater than just an argument that the committee would not hire her for discriminatory reasons, however. Plaintiff alleges, and comes forward with evidence, that the Defendant may not have presented her application to the committee for discriminatory reasons, or that other discrimination may have taken place. Steptoe is shown to have great control over the hiring process. His responsibility in forwarding the applications, asking the former Director to step down, and approving the recommendations of the Committee, when coupled with the evidence of his discriminatory statements, raises an issue as to whether Plaintiff may have been discriminated against for improper reasons.

Defendants also claim that Plaintiff has not presented a prima facie case because she cannot show that she was actually rejected for the job. In other words, Moore could not have been rejected, because the committee never considered her. This argument is merely a restatement of Defendant's argument that Plaintiff never applied. Plaintiff has presented a fact question as to whether she applied. It is also uncontested that she did not receive the job. If she did indeed apply, there can be no other conclusion except that she was rejected.

Plaintiff has also presented evidence of her qualifications sufficient to survive summary judgment. The advertisement for the position spoke of ASU's desire to have someone with experience, if not in the field of admis-

sions at least in a related field, and of the requirement of a bachelor's degree, and the requirement of certain communication skills. *Plaintiff's Exh. 6B.* Plaintiff had extensive experience: she worked in the ASU Admissions office for some thirteen years before Brooks was hired. Plaintiff also had the requisite education, including a master's degree. *Plaintiff's Depo. at 22.* In the time that she worked in Admissions, Plaintiff had been given increased responsibility. Steptoe even asked her to take on some of the responsibilities of Director when the office was vacant. While the members of the Committee obviously had some problems with Plaintiff's communication skills during the 1992 interview, the problems were not so severe that they would not rate her second of all the applicants. Plaintiff has presented evidence of her qualifications sufficient to defeat summary judgment.

Likewise, Plaintiff has also presented evidence that a male of lesser qualifications received the position. Brooks had never worked in the Admissions Office, although he had some related experience. In any case, he did not have the extensive experience of Plaintiff. In addition, it would be difficult for the Defendants to defend their selection of Brooks based on a superior interview by Brooks. Brooks himself testified that he was never in fact interviewed. Plaintiff has, therefore, raised a question as to whether Brooks was less qualified.

Once Plaintiff has presented a prima facie case, the Defendants are required to rebut the case by furnishing legitimate, non-discriminatory reasons for their decision. Defendants have raised the qualifications that Brooks did possess, Moore's poor interview in 1992, Brook's selection by the committee in 1993, and the assertion that Plaintiff never actually applied. This evidence clearly satisfies Defendant's simple burden of production of legitimate, non-discriminatory reasons.

Plaintiff likewise has satisfied her burden to respond to Defendant's assertion, by presenting evidence that the Defendants were actually motivated by discriminatory animus and that Defendant's proferred reasons are merely pretext. Plaintiff has submitted her evidence in favor of the prima facie case, comparative evidence of her's and Brook's qualifications, and the direct evidence of Steptoe's discriminatory animus. Plaintiff's assertions are more than mere conclusory allegations, and are sufficient to withstand summary judgment.

## V. CONCLUSION

For the reasons stated above, Defendants' Motion for Summary Judgment is due to be, and hereby is, DENIED.