IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 98-20216

Summary Calendar
_____

GENERAL TAYLOR, JR, ET AL,

                                        Plaintiffs

JOHN TAYLOR

                                        Plaintiff - Appellant,

v.

EXXON CORPORATION,

                                        Defendant - Appellee.

_____

Appeal from the United States District Court
for the Southern District of Texas
(H-96-CV-143)
_____

November 16, 1998

Before KING, BARKSDALE, and STEWART, Circuit Judges.

PER CURIAM:[*]

On January 17, 1996, John Taylor, an Exxon employee, filed suit against Exxon, alleging race discrimination under Title VII of the Civil Rights Act of 1964. On January 18, 1996, Taylor filed a race discrimination charge with the EEOC. Exxon Corporation terminated Taylor's employment on February 1, 1996.

_____

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

On May 13, 1997, Taylor filed his First Amended Complaint, claiming Exxon discharged him in retaliation for filing the race discrimination charge with the EEOC.  The district court granted Exxon's motion for summary judgment on January 28, 1998.  Taylor appeals with respect to the Title VII retaliation claim.

I.

John Taylor began working for Exxon on December 16, 1987, as an administrative clerk in the mail room of the Controller's Department.  He worked at various jobs in the Banking section of the Controller's Department for six years.  In late 1994, the Banking and Vendor Verification sections were merged, and Don Wallenhorst became Taylor's new supervisor.  Taylor asked Wallenhorst for more responsibility.  In response, Taylor was moved to the Vendor Verification section in December of 1994.  Jayne Hollywood was coordinator of the Vendor Verification section.  The employees in the Vendor Verification section were responsible for verifying the authenticity of new vendor invoices for payments.  Exxon adopted written procedures explaining the steps to be followed in the verification process.

In the Spring of 1995, Taylor received a performance evaluation for the previous 12-month period.  He was ranked in the bottom 10% of his peer group, which consisted of all non-exempt employees in the "Downstream Accounting group."  According to Exxon, customer comments, the need for close supervision, and numerous errors accounted for Taylor's low ranking.  As a result

2

of his poor performance, Taylor received numerous verbal instructions and was counseled several times between April and August 1995.

Taylor contends that in April of 1995, his supervisor, Wallenhorst, began harassing him and being rude to him. Taylor attributes this treatment to his ethnicity. However, he did not report anything to the Human Resources Department until August 24, 1995, when he reported three separate incidents.

First, Taylor reported that in April, while discussing Exxon business with Taylor, Wallenhorst stated: "[I]f we all go down, I mean, its just like the NAACP, John. We all go down just like the NAACP went down." Second, Taylor reported an incident that occurred in August. This incident involved mistakes that Taylor had made and Jayne Hollywood, his section coordinator, had discovered. Hollywood approached Taylor on two occasions on the same day about mistakes. On the second occasion, Hollywood used profanity. According to Taylor, she stated: "[L]ook at me. Look at me. I am tired of this bullshit. I don't know what the problem is." Third, Taylor reported that in the fall of 1995, during a meeting in which Wallenhorst, Hollywood, and Taylor were present, Wallenhorst announced that Taylor had received a pay raise. Taylor objected to Jane Hollywood's presence in the room. According to Taylor, Wallenhorst asked if Taylor would mind if Will Cunningham was in the room. Taylor believed Wallenhorst was insinuating that Taylor had a problem with a white female and not a black male.

3

In November of 1995, Wallenhorst presented Taylor with a Performance Improvement Plan that had been developed specifically for Taylor. As part of the Plan, Wallenhorst advised Taylor of several specific areas which required his immediate attention, the most important of which were to "follow the established vendor verification control procedures" and to "record accurate documentation associated with these steps." Wallenhorst also informed Taylor that his Plan progress would be monitored and that if his performance did not improve Exxon would take disciplinary action against him, including termination.

On January 17, 1996, Wallenhorst conducted an interim improvement performance review. He informed Taylor that, while Taylor had improved, the improvement was not sufficiently significant to remove his work from the unsatisfactory category. Wallenhorst cited specific deficiencies, which Taylor has not disputed. Wallenhorst again warned Taylor about his errors.

On January 18, 1996, the day after Taylor received a negative review and was threatened with termination should his performance fail to improve, Taylor filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). Several days later, Taylor informed Wallenhorst that he had filed a charge with the EEOC. On January 31, 1996, Taylor was suspended from employment for failing to verify two vendor invoices. In the verification process, Taylor represented that he had verified the vendor information, thus authorizing all future invoices submitted by the two vendors. On February 1,

4

1996, Taylor was terminated for "falsifying company documents."

## II.

On January 17, 1996, General Taylor, Jr., Elizabeth L. Harris, and John Taylor filed a class action complaint against Exxon.  The Plaintiffs were represented by Julius L. Larry, III.  On November 5, 1996, the court granted Larry's motion to withdraw as counsel.  On February 20, 1997, the court granted the plaintiffs sixty days to secure new counsel and proceed with the case.

General Taylor, Jr. and Elizabeth L. Harris failed to appear at the next scheduling conference on April 21, 1997. Accordingly, the court dismissed their claims for want of prosecution.  John Taylor, however, appeared at the April 21, 1997, scheduling conference represented by Steve Petrou and at that time made an oral motion for leave to amend his complaint. On April 23, 1997, the court granted Taylor's motion and allowed him to amend his complaint to proceed as an individual action.

Taylor subsequently submitted his amended pleading alleging race discrimination and retaliation under Title VII of the Civil Rights Act of 1964.  On January 28, 1998, the district court granted summary judgment in favor of Exxon.  Taylor appeals the district court's dismissal of his retaliation claim.

## III.

This court reviews a grant of summary judgment de novo.

<u>Scot Properties, Ltd. v. Wal-Mart Stores, Inc.</u>, 138 F.3d 571, 573 (5th Cir. 1998). A party is entitled to summary judgment upon a showing that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. <u>Anderson v. Liberty Lobby, Inc.</u>, 106 S.Ct. 2505, 2510 (1986). Any fact "that might affect the outcome of the suit under the governing law" is a material fact. <u>Id.</u> The court must consider the facts in the light most favorable to the non-moving party. <u>Id.</u> at 2513. In opposing a motion for summary judgment, the non-moving party may not rest upon mere allegations or denials but must set forth specific facts showing that there is a genuine issue of material fact. <u>Morris v. Covan Worldwide Moving, Inc.</u>, 144 F.3d 377, 380 (5th Cir. 1998); FED. R. CIV. P. 56(e). If the non-movant bears the burden of proof at trial, the moving party need not submit evidence to support its motion, but need only point out the absence of evidence supporting the non-movant's case. <u>Saunders v. Michelin Tire Corp.</u>, 942 F.2d 299, 301 (5th Cir. 1991).

IV.

In the Title VII retaliation context, the courts have created a burden-shifting analysis for use in summary judgment proceedings. First, the plaintiff must present sufficient evidence to establish a prima facie case of retaliation. <u>See</u> <u>Ray v. Tandem Computers, Inc.</u>, 63 F.3d 429, 435 (5th Cir. 1995). Upon such a showing, the burden shifts to the employer to offer a

6

legitimate, nondiscriminatory reason for its adverse actions. Id. If the employer makes such a showing, the plaintiff may avoid summary judgment by showing that the employer's reason is pretextual and that "but for" the plaintiff's protected activities, the plaintiff would not have been subject to the adverse actions. Id.

To establish a prima facie case of retaliation, a plaintiff must demonstrate that: (1) he engaged in a statutorily protected activity; (2) an adverse employment action occurred; and (3) there was a causal connection between the protected activity and the adverse employment action. See Nowlin v. Resolution Trust Corp., 33 F.3d 498, 507 (5th Cir. 1994).

Exxon does not contest that the first two elements of the prima facie case are met. It is undisputed that Taylor engaged in a statutorily protected activity when he filed a race discrimination claim with the EEOC. Taylor's termination from Exxon was an adverse employment action. See Mattern v. Eastman Kodak Co., 104 F.3d 702, 707 (5th Cir. 1997), cert. denied, 118 S.Ct. 336 (1997)(The "adverse employment action" prong requires evidence of an "ultimate employment decision" such as hiring, granting leave, discharging, promoting, and compensating.). However, Exxon contends that the third element of the prima facie case is not satisfied. According to Exxon, Taylor has failed to present sufficient evidence to show a causal connection between the protected activity and the adverse employment action.

Causation can be inferred upon a showing of the employer's

knowledge of the protected activity, along with a temporal relationship between that knowledge and the adverse consequences. See Ray, 63 F.3d at 435 n.23; Payne v. McLemore's Wholesale & Retail Stores, 654 F.2d 1130, 1141 n.13 (5th Cir. 1981). This court has also found that in deciding on causation it is helpful to look at the employee's past disciplinary record and whether the employer followed its typical policy and procedures in terminating the employee. See Nowlin, 33 F.3d at 508.

The temporal relationship between Taylor's complaints and his discharge does not support a finding of retaliation. Taylor first complained of race discrimination in August 1995, to Sharyl Hackett in the Human Resources Department. Taylor, however, was well aware prior to his meeting with Hackett that his supervisors were dissatisfied with his work performance. He had already been told by his supervisors that his work performance was low, that he would be required to work overtime like the other members of the team, and that his failure to follow vendor verification procedures was a concern. Taylor had already been ranked in the bottom 10% of his rank group. The day before Taylor filed an EEOC charge, Wallenhorst told Taylor that his performance remained unsatisfactory and that if his performance did not improve his employment might be terminated. Taylor's performance did not improve, and, on January 24 and 26, Taylor again failed to follow proper vendor verification procedures.

Taylor now claims that Exxon took retaliatory action against him after he filed a race discrimination lawsuit on January 17,

8

1996.  There is no evidence in the record, however, that any of Taylor's supervisors knew, prior to the time of Taylor's discharge, that he had filed a lawsuit against Exxon on January 17, 1996.  Rather, Taylor's supervisors found out only about Taylor's EEOC charge, and this was after Taylor had already been repeatedly counseled for his poor performance and his failure to follow proper vendor verification procedures.  Accordingly, causation cannot be inferred in this case, because there is no showing of a temporal relationship between Exxon's knowledge of the protected activity and Exxon's termination of Taylor.

Taylor's past disciplinary record also weighs against a finding of retaliatory discharge.  Even before Taylor first complained about race discrimination in August 1995, Wallenhorst and Hollywood repeatedly counseled him for various performance deficiencies.  Some of these deficiencies included:  failure to follow proper vendor verification procedures, mistakes and errors in processing invoices, low productivity, failure to participate in overtime work, and elimination of an important control report without consulting his supervisors.  On August 23, 1995, when Hollywood "cursed" Taylor for his mistakes, Hollywood was frustrated at Taylor's continuing failure to follow proper procedures and to improve his performance.  This incident, which evidenced Hollywood's heightened frustration with Taylor's ongoing performance, is the very incident that prompted Taylor to complain to the Human Resources Department in the first place.

In addition, the events Taylor claims are possible

"evidence" of retaliation, such as a change in his hours and the prohibition on him having visitors in his area, were either suggested to him before he complained of discrimination or were policies enforced against all Vendor Maintenance employees. There is no evidence to suggest that this policy, which Wallenhorst reiterated to Taylor in August 1995, was created as a result of Taylor having complained to the Human Resources Department.

Furthermore, Hollywood documented in her August 24, 1995, 8:38 a.m. memorandum (in which she documented the "cursing" incident) that she suggested to Taylor that he modify his work hours to make it possible for him to perform all the vendor verification requirements. Thus, Hollywood told Taylor he needed to modify his work hours before Taylor first complained of race discrimination to the Human Resources Department at 3:00 p.m. on August 24, 1995. This is direct evidence that Taylor was treated no differently after he complained to the Human Resources Department.

The record also indicates that Exxon followed its typical policy and procedures when it discharged Taylor. In 1995, the Controller's Department discharged at least three other employees for violating company procedures. Taylor claims that other employees made more egregious mistakes than he did, yet their employment was not terminated. For example, Taylor notes that Barbara Kingston's "mistake" in 1992 enabled another employee to embezzle $600,000 from the company. Taylor ignores the fact that

10

in 1992 the vendor verification procedures were less stringent, and Barbara Kingston complied with the vendor verification procedures in place at the time.  Also, Taylor notes that Arthur DeLaGarza was "merely counseled" for approving an overpayment of $500,000.  However, the record indicates that DeLaGarza was responsible for reviewing daily invoices.  His mistake was only an "oversight."  He failed to notice that a figure that was supposed to be $50,000 was instead printed as $500,000.  Taylor has not demonstrated that Exxon deviated from its typical policy and procedures when it discharged Taylor for failure to follow proper vendor verification procedures and falsifying company documents.

Taylor has failed to establish a prima facie case of retaliation under Title VII.  The record establishes that Taylor's discharge was not related to his complaints of discrimination.  Rather, it was a direct result of his falsification of company documents and his failure to follow procedures despite repeated warnings and opportunities to correct his performance.

In a Title VII retaliation case, the ultimate determination required for the plaintiff to succeed is that "retaliation for filing a charge under Title VII was a 'but for' cause of the adverse employment decision."  McDaniel v. Temple Indep. Sch. Dist., 770 F.2d 1340, 1346 (5th Cir. 1985).  Taylor cannot demonstrate that "but for" his exercise of a protected activity, Exxon would not have terminated his employment.  Given Taylor's

history of performance deficiencies and the gravity of the offense that led to his discharge, Exxon would have discharged Taylor even if he had never filed an EEOC charge or complained to the Human Resources department. "[N]o liability for unlawful retaliation arises if the employee would have been terminated even in the absence of the protected conduct." Long v. Eastfield College, 88 F.3d 300, 305 n.4 (5th Cir. 1996). Because Taylor cannot carry this burden of proof, summary judgment in favor of Exxon was appropriate. See McDaniel, 770 F.2d at 1346.

Taylor is unable to prove the essential elements of his prima facie case for retaliation. There are no genuine issues of material fact: Taylor's work performance was unsatisfactory; his supervisors placed him on a performance improvement plan; his supervisors counseled him on numerous occasions about following proper procedures; and Taylor, despite the repeated counseling sessions, failed to follow the proper procedures in setting up two vendor accounts in January 1996. Exxon discharged Taylor for legitimate, non-discriminatory reasons.

V.

For the foregoing reasons, we find that the district court did not err in granting summary judgment in favor of Exxon. The judgment is AFFIRMED.

12