# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

April 15, 2008

Charles R. Fulbruge III
Clerk

No. 07-30950
Summary Calendar

DOCTOR JAMES MURUNGI,

Plaintiff-Appellant,

v.

XAVIER UNIVERSITY OF LOUISIANA,

Defendant-Appellee.

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:05-CV-05242

Before HIGGINBOTHAM, STEWART, and ELROD, Circuit Judges.

PER CURIAM:[*]

Dr. James Murungi appeals the district court's grant of summary judgment dismissing his sex and national origin discrimination claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. For the reasons discussed below, we AFFIRM.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

## I. Background

Xavier University of Louisiana ("Xavier") employed Murungi as an assistant clinical professor on its non-tenure track beginning in August 2000. He received eleven-month contracts for successive academic years despite a history of poor student evaluations. Xavier ultimately declined to rehire Murungi, who sued under Title VII for failure to promote and failure to renew his contract.

In February 2002, Dr. Patricia Lieveld, then Chair of the Division of Clinical and Administrative Sciences, noted complaints by Murungi's students and addressed Murungi's unwillingness to adopt her substantive suggestions regarding the content of a lecture. She also suggested that Murungi attend faculty development programs to improve his teaching. Murungi testified that Lieveld's memorandum was "a kooky document."

Thereafter, Murungi received a memorandum from Dr. Wayne T. Harris, Dean of the College of Pharmacy, stating that student comments and evaluation results indicated a need for Murungi to improve his teaching. Harris noted that Murungi's response to Lieveld's memorandum conveyed a lack of understanding of the need to formulate a concrete strategy for improving his effectiveness.

In May 2002, Harris again expressed concern regarding students' poor ratings of Murungi's teaching and requested that Murungi work with Lieveld to prepare a faculty development plan. Harris conveyed his desire for Murungi to function as an effective faculty member and his willingness to provide assistance.

In January 2005, Dr. Marianne Billeter, a pharmacist employed at Ochsner Hospital ("Ochsner"), complained about Murungi's performance with regard to students at Xavier's clinical program at Ochsner. Murungi responded with an email to Billeter calling her allegations "deceitful and disgenuine [sic]" and generally attacking her treatment of Xavier's students. Harris subsequently informed Murungi that his reply email was inappropriate and that because

2

Ochsner was an important institutional stakeholder to the College of Pharmacy, issues with Ochsner must be resolved in a professional, efficient manner. Before sending the response, Murungi had apparently consulted with and made revisions suggested by Dr. William Kirchain, Chair of the Division of Clinical and Administrative Services. Harris was unaware of that interaction when he sent his memorandum.

Murungi first sought promotion to associate professor in January 2005. In a December 2004 evaluation of Murungi, Kirchain had recommended Murungi for promotion and for retention for the following academic year. On February 2, 2005, however, Murungi received a letter indicating that Kirchain was rescinding his recommendation for promotion due to students' complaints regarding Murungi's final examination, his persistently low student evaluations, and his problems with Ochsner personnel. Subsequently, Dean Harris advised that, as a result of Murungi's continued problems with poor student evaluations and his professional interactions with Ochsner, Harris would recommend that Xavier not renew Murungi's contract for the 2006-2007 academic year.

In June 2005, Murungi was informed that the Rank and Tenure Committee had been unable to review his promotion request before the end of the semester but that he would receive consideration as the first candidate when the committee reconvened in the fall. Before the committee could consider his request, however, Hurricane Katrina forced Xavier to close, prompting termination of all faculty contracts as of October 2005. Xavier ultimately declined to rehire Murungi upon issuing new faculty contracts.

Murungi, a male of Kenyan ancestry, brought this discrimination lawsuit complaining of Xavier's failure to promote him (although Hurricane Katrina intervened before Xavier made an official decision) and failure to renew his employment contract. Xavier filed a motion for summary judgment, and Murungi argued in response that all faculty members in his division were offered post-Katrina replacement contracts except for him, even though several had also

received poor student evaluations. Murungi asserted that student evaluations are "deeply imperfect tools" and a "weak measure of instructional quality"; that his evaluation scores were not so low that they reached an alleged "warning level" referenced in a letter from Kirchain and that other faculty members who were retained had scores below that level; that the problem with Billeter at Ochsner was "sad, but not relevant" because Billeter was not a physician, nurse or patient; and that three of four letters about Murungi from Ochsner personnel to Xavier were favorable. Finally, Murungi complained that of the four faculty members seeking promotion in 2005, three women candidates were promoted while he was ultimately terminated.

The district court granted Xavier's motion for summary judgment, finding that Murungi had failed to establish a prima facie case of discrimination or, alternatively, that he had failed to establish pretext or a discriminatory motivating factor in response to Xavier's proffered reasons for its actions. Murungi appeals.

## II. Standard of Review

We review a district court's grant of a motion for summary judgment de novo. Hall v. Gillman Inc., 81 F.3d 35, 36 (5th Cir. 1996) (citation omitted). Summary judgment is proper only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The movant bears the initial burden of "'demonstrat[ing] the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." Little v. Liquid Air. Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). If the movant meets this burden, then "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." Id. (citing Celotex, 477 U.S. at 325).

During this process "factual controversies [are resolved] in favor of the

nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." Id. The materiality of facts depends on the substantive law, and only disputes over outcome-determinative facts properly preclude summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

## III. Discussion

### A. Exhaustion of Administrative Remedies

Xavier first argues that Murungi's claims should have been dismissed because Murungi did not exhaust his administrative remedies. The district court noted a lack of direct evidence that Murungi either filed a complaint with the Equal Employment Opportunity Commission (EEOC) or received a right-to-sue letter before filing suit. Murungi alludes to receiving an EEOC letter prior to Hurricane Katrina and complains that Xavier should have raised the issue in its summary judgment motion so that Murungi could respond. Neither the parties nor the district court addressed the exhaustion issue with any specificity, however, and we need not resolve it to decide this appeal. See Pacheco v. Mineta, 448 F.3d 783, 788 n.7 (5th Cir. 2006) (noting disagreement in this circuit on whether exhaustion of administrative remedies in a Title VII suit is a jurisdictional requirement or merely a prerequisite to suit subject to waiver and estoppel; and stating that because neither party has a winning argument, "we need not take sides in this dispute").

### B. Review of Summary Judgment Evidence

Title VII prohibits an employer from discharging or otherwise discriminating against any individual because of that individual's sex or national origin. 42 U.S.C. § 2000e-2(a)(1). "The Title VII inquiry is whether the defendant intentionally discriminated against the plaintiff." Roberson v. Alltel Info. Servs., 373 F.3d 647, 651 (5th Cir. 2004) (internal quotation marks and citation omitted). Such discrimination can be demonstrated through either direct or circumstantial evidence. Nasti v. CIBA Specialty Chems. Corp., 492

F.3d 589, 593 (5th Cir. 2007).

Because Murungi presents no direct evidence of discrimination, we analyze his claim using the burden-shifting framework originally set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973):

> [A] plaintiff must first create a presumption of intentional discrimination by establishing a prima facie case. The burden then shifts to the employer to articulate a legitimate, non-discriminatory reason for its actions. The burden on the employer at this stage is one of production, not persuasion; it can involve no credibility assessment. If the employer sustains its burden, the prima facie case is dissolved, and the burden shifts back to the plaintiff to establish either: (1) that the employer's proffered reason is not true but is instead a pretext for discrimination; or (2) that the employer's reason, while true, is not the only reason for its conduct, and another motivating factor is the plaintiff's protected characteristic.

Alvarado v. Texas Rangers, 492 F.3d 605, 611 (5th Cir. 2007) (internal quotation marks and citations omitted).

To establish a prima facie case of discrimination under Title VII, Murungi must show that: "(1) [he] is a member of a protected class; (2) [he] was qualified for the position [he] sought; (3) [he] suffered an adverse employment action; and (4) others similarly situated but outside the protected class were treated more favorably." Id. Reviewing the summary judgment record de novo, we find that Murungi has failed to establish a prima facie case of discrimination. Although there may be some evidence of the first three elements, Murungi has failed to present competent summary judgment evidence on the fourth element of establishing that others were similarly situated but were treated more favorably. Although Murungi baldly asserts that several faculty members within his division received poor student evaluations without attendant notices of impending termination, he has presented no competent summary judgment evidence that any of these faculty members had a sustained record of poor evaluations similar to his or that they had problems similar to his issues with Ochsner.

Further, as the district court found, even assuming arguendo that Murungi met his initial burden, Xavier would still be entitled to summary judgment. Xavier has articulated legitimate, non-discriminatory reasons for not promoting Murungi and for not renewing his contract, including his longstanding history of poor student evaluations, his students' recurrent complaints about his teaching, and his unprofessional response to the Ochsner complaint. Although Murungi may not believe his student evaluation scores warrant non-renewal of his contract, employment discrimination laws are "'not intended to be a vehicle for judicial second-guessing of employment decisions nor . . . to transform the courts into personnel managers.'" EEOC v. La. Office of Cmty. Servs., 47 F.3d 1438, 1448 (5th Cir. 1995) (quoting Bienkowski v. Am. Airlines, Inc., 851 F.2d 1503, 1507–08 (5th Cir. 1988)).

Once Xavier proffered non-disciminatory reasons for its actions, the burden shifted back to Murungi, who was required to present evidence of either pretext or intentional discrimination on Xavier's part. Murungi testified that because he was the professor with the lowest salary in his division, he was the only professor who was not invited back after Hurricane Katrina, and he was the only professor who was Kenyan, Xavier's actions "cannot be anything else" but discrimination. Because Murungi could offer nothing more than his subjective belief that Xavier discriminated against him and gave pretextual reasons for its actions, summary judgment was appropriate on this alternative ground. See Ray v. Tandem Computers, Inc., 63 F.3d 429, 435 (5th Cir. 1995) ("[B]ald assertions of . . . discrimination are inadequate to permit a finding that proscribed discrimination motivated [defendant's] actions against [plaintiff]."); see also Grizzle v. Travelers Health Network, Inc., 14 F.3d 261, 268 (5th Cir. 1994) (noting that employee's "self-serving generalized testimony stating her subjective belief that discrimination occurred . . . is simply insufficient to support a jury verdict in plaintiff's favor").

## IV. Conclusion

Accordingly, finding no error in the district court's summary judgment on Murungi's Title VII claims, we AFFIRM.